IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SHATTUCK BANCSHARES, INC., AND SNB BANK, N.A.<br><br>**Plaintiffs,**<br>v.<br><br>ERIC HANNELIUS, MICHAEL SHVARTSMAN, OKSANA MOORE, KARLA KNIGHT, ELENA POPOVA, JUSTIN SOULEN, BILL MY BNK, LLC, BT ASSETS GROUP, INC., EFT BUSINESS SERVICES, LLC, ENCOMPAY, INC., HANNELIUS-KNIGHT FAMILY TRUST, MG FAMILY TRUST, ONE PAY CLOUD, LLC, OST, LLC, PEPPER PAY, LLC, ROCKET HOLDINGS, LLC, SALT MONEY, INC., SKYLIGHT BUSINESS SERVICES, LLC, TRANSACT FIRST, INC., AND TRANSACTION PROCESSING SERVICES, INC.,<br><br>**Defendants.** | Case No. 5:24-cv-00677-J |

**SPECIAL APPEARANCE AND MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION AND
FAILURE TO STATE A CLAIM AND SUPPORTING BRIEF**

This case was removed on July 3, 2024 when several defendants had not yet been served. On July 10, several corporate defendants filed their motion to transfer venue or, in the alternative, motion to dismiss [Doc. No. 19] and several individual defendants filed a motion to dismiss for lack of personal jurisdiction, improper services and failure to state a claim [Doc. No. 27]. Now, Defendants Eric Hannelius ("Hannelius"), Karla Knight ("Knight"), and the Hannelius-Knight Family Trust ("H-K Trust") ("Movants") hereby

1

specially appear and move to dismiss the claims against them on the grounds of lack of personal jurisdiction and failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(2) and 12(b)(6). In addition, Plaintiffs improperly named H-K Trust as a defendant because a trust does not have the capacity to sue or be sued.[1]

Because the Court is able to dismiss Plaintiffs' claims as to Hannelius and Knight for lack of personal jurisdiction and as to H-K Trust on the basis it cannot be sued, Movants address those issues first.

## FACTUAL BACKGROUND

1. Neither Hannelius nor Knight reside, conduct business in, or have otherwise traveled to Oklahoma. Ex. 1, Declaration of Karla Knight, ¶ 4; Ex. 2, Declaration of Eric Hannelius, ¶ 4. Plaintiffs do not allege otherwise in their Complaint.

2. Rather, all of Plaintiffs' claims and allegations against them stem from their alleged actions made in the course and scope of their work or ownership for the various corporate defendants and/or trusts and on behalf of those entities. *See e.g.*, Complaint, ¶¶ 2, 31, 43, 46, 51, 54-60, 64, 66, 68, 71, 73-74, 102, 107, 132, 150, 162, 168, and 201 [Doc. No. 1-1].

3. The Plaintiffs' first, second and third claims are for breach of contracts entered into by "Business Defendants," identified in Paragraph 2 of the Petition as the defendants who are not these individuals. *See id.* at ¶¶ 2, 149-157.

---

[1] Movants are aware that the corporate defendants filed a motion to transfer this case to the Southern District of Florida [Doc. No. 19], to which they have no objection.

4. The Plaintiffs do not allege that Hannelius or Knight entered any contract with them or breached any contract with Plaintiffs.

5. The Plaintiffs do not allege <u>general</u> personal jurisdiction. *Id.* at ¶ 28.

### ARGUMENTS AND AUTHORITIES

### I. THE COURT LACKS PERSONAL JURISDCITION OVER HANNELIUS AND KNIGHT

**A. Knight**

Plaintiffs allege Knight is a resident of Maine and Florida, and H-K Trust is organized under Florida law. *See* Complaint ¶¶ 8, 15. They also allege that Knight completed certain documents for some corporate defendants, and that she acted on behalf of certain corporate defendants. *Id.* ¶¶ 55-59. There are no allegations that Knight took any action in Oklahoma or otherwise in her personal capacity. Indeed, she has not. *See* Ex. 1, Knight Decl., ¶ 5.

Federal courts may exercise personal jurisdiction over a defendant "who is subject to the jurisdiction of a [state] court . . . in the state where the [federal] court is located." Fed. R. Civ. P. 4(k)(1)(A). This requires courts to focus first on state law, and particularly, the relevant state's long-arm statute. That statute establishes the extent to which the state intends its courts to exercise jurisdiction over nonresidents. *Newsome v. Gallacher*, 722 F.3d 1257, 1264 (10th Cir. 2013). The Oklahoma legislature has authorized Oklahoma courts to "exercise jurisdiction on any basis consistent with the Constitution of this state and the Constitution of the United States." Okla. Stat. tit. 12, § 2004(F).

To exercise jurisdiction in harmony with due process, defendants must have "minimum contacts" with the forum state, such that having to defend a lawsuit there would not "offend traditional notions of fair play and substantial justice." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc*., 514 F.3d 1063, 1070 (10th Cir. 2008) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  As a general matter, then, if a nonresident party has "continuous and systematic general business contacts with the forum state," general personal jurisdiction might exist.  *Trujillo v. Williams*, 465 F.3d 1210, 1218 n.7 (10th Cir. 2006) (internal quotation marks omitted).  The Complaint does not suggest that any defendant has sufficient systematic contacts with Oklahoma to warrant general personal jurisdiction there.  In fact, Plaintiffs do not allege general personal jurisdiction over the Defendants. Complaint, ¶ 28. Thus, in this case, personal jurisdiction must be determined upon whether Plaintiffs can establish specific personal jurisdiction—i.e., jurisdiction specific to this dispute—and its attendant "minimum contacts" test.  *Newsome*, 722 F.3d at 1264.

"Because a state's sovereignty is territorial in nature, a defendant's contacts with the forum state must be sufficient such that, notwithstanding its lack of physical presence in the state, the state's exercise of sovereignty over it can be described as fair and just." *Dudnikov*, 514 F.3d at 1070.  To implement this principle, courts typically make three inquiries: (1) whether the defendant purposefully directed its activities at residents of the forum state; (2) whether the plaintiff's injury arose from those purposefully directed activities; and (3) whether exercising jurisdiction would offend traditional notions of fair play and substantial justice. *Id*. at 1071.

4

There is no allegation that Knight took any action that could justify personal jurisdiction. She does not have sufficient contacts in Oklahoma, she does no personal business in Oklahoma, and she has never been to Oklahoma. Ex. 1, Knight Decl., ¶ 4. To the extent that she signed a document on behalf of a corporate defendant, that does not justify personal jurisdiction over her.

"[T]he no-imputed-contacts rule is integral to the minimum contacts due process test." *Newsome*, 722 F.3d at 1275. In *Newsome*, the Tenth Circuit explained:

> Jurisdiction over a corporation in a particular forum does not automatically confer jurisdiction over that corporation's employees. If, for example, a Kansas company markets a defective product in Oklahoma and the product ends up injuring an Oklahoma resident, that is usually enough to confer personal jurisdiction over the company in Oklahoma courts in the ensuing product liability suit. But under the no-imputed-contacts rule, Oklahoma's jurisdiction over the company does not necessarily give Oklahoma jurisdiction over the company's Kansas employees. Employees' "contacts with [the forum state] are not to be judged according to their employer's activities there."

*Id.* (quoting *Calder v. Jones*, 465 U.S. 783, 790 (1984)).

In *SportChassis, LLC v. Broward Motorsports of Palm Beach, LLC*, 2011 U.S. Dist. LEXIS 15160 (W.D. Okla. 2011), this court, applying Oklahoma law, held that individual defendants who were "managing members" of the corporate defendant were not subject to jurisdiction in Oklahoma because they were not parties to the contract at issue, and "there is no indication that any communication [they] did have with [plaintiffs] were made for anything other than the benefit of [the corporate defendant]." *Id.* at *8-9. In this case, there is no allegation that Knight was party to the contracts that the corporate defendants had with the bank. Even if an individual officer or owner of a corporate defendant signed a contract on its behalf, a contract alone does not subject a non-resident defendant to the

5

jurisdiction of the subject forum. *AST Sports Science, Inc. v. CLF Distr. Ltd*, 514 F.3d 1054, 1059 (10th Cir 2008). While a corporate defendant who opens an account in Oklahoma may reasonably anticipate being haled into an Oklahoma court, an officer who signed a document on its behalf and who has no connection to Oklahoma does not.

The only allegations about Knight relate to documents she signed to open accounts on behalf of several corporate defendants. That limited contact does not subject her to jurisdiction in Oklahoma.

The no-imputed-contacts rule prevents courts from attributing Oklahoma contacts to Knight solely because the corporate defendants for whom she worked had contacts in Oklahoma. *Newsome*, 722 F.3d at 1276. Moreover, Knight is not a party to any contracts with Plaintiffs and, even if she was, that would not subject her to jurisdiction in Oklahoma. While the corporate defendants may have sufficient contacts with Oklahoma, Knight does not. Accordingly, the Court should dismiss the claims against her for lack of personal jurisdiction.

**B. Hannelius**

The allegations against Hannelius should also be dismissed because they do not justify personal jurisdiction. Plaintiffs allege that Hannelius is a resident of Maine and Florida. Complaint, ¶ 5. He has no sufficient contacts in Oklahoma, he does no personal business in Oklahoma, and he has never been to Oklahoma. Ex. 2, Hannelius Decl., ¶ 4. To the extent that he signed a document on behalf of a corporate defendant, that does not justify personal jurisdiction over him. "[T]he no-imputed-contacts rule is integral to the minimum contacts due process test." *Newsome*, 722 F.3d at 1275; *SportChassis, LLC v.*

6

*Broward Motorsports of Palm Beach, LLC*, 2011 U.S. Dist. LEXIS 15160 (W.D. Okla. 2011). Even if an individual officer or owner of a corporate defendant signed a contract on its behalf, a contract alone does not subject a non-resident defendant to the jurisdiction of the subject forum. *AST Sports Science, Inc.*, 514 F.3d at 1059.

Plaintiffs allege that Hannelius signed documents on behalf of several corporate defendants in order for them to open accounts. As set forth above, that limited contact does not subject him to jurisdiction in Oklahoma. Unlike their claims against Knight, Plaintiffs claim that Hannelius also engaged in email communications with the bank. In paragraphs 31, 41, and 132 of the Complaint, Plaintiffs refer to email correspondence "initiated by SNB's Assistant Vice President and Cashier" about the accounts of two of the corporate defendants (Transact First, Inc. and EFT Business Services, LLC).

As with the allegations against Knight, the no-imputed-contacts rule prevents courts from attributing Oklahoma contacts to Hannelius solely because the corporate defendants had contacts in Oklahoma. *Newsome*, 722 F.3d at 1276. He is not party to any contracts with Plaintiffs and, even if he was, that would not subject him to jurisdiction in Oklahoma. Phone calls and correspondence are not sufficient in themselves to establish minimum contacts. *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1077 (10th Cir., 1995). Even if those email strings (initiated by Plaintiffs) with Hannelius while he was outside of Oklahoma somehow were deemed minimum contacts, the exercise of personal jurisdiction over him would still offend traditional notions of fair play and substantial justice. *Benton v. Cameco Corp.*, 375 F.3d 1070, 1080 (10th Cir. 2004). Accordingly, the Court should also dismiss the claims against him for lack of personal jurisdiction.

7

## II.     H-K TRUST WAS IMPROPERLY NAMED AS A DEFENDANT.

In the Complaint, Plaintiffs named H-K Trust as a defendant based on accounts opened on behalf of corporate defendants BT Assets Group, Inc., EnComPay, Inc., and One Pay Cloud, LLC (which filed bankruptcy[2]), and OST, LLC. Complaint, ¶¶ 56, 58-60. Plaintiffs allege that Hannelius and Knight opened those accounts as trustees of the H-K Trust. *Id.* at ¶ 61. However, that trust lacks the capacity to be sued. When a trustee makes a contract on behalf of a trust and a cause of action arises thereon, the plaintiff may sue the trustee in his representative capacity. Okla. Stat. tit. 60, § 175.18.

The overwhelming weight of authority is clear that "[t]he trustee is the proper party defendant in a suit involving a trust, and a trust generally is not recognized as a separate legal entity with the capacity to be sued in its own name." *Trident Tr. Co. (UK) v. Anglo-Am. Credit Union, Inc.*, No. 1:07CV893, 2008 WL 2599891, at *2 (S.D. Ohio June 26, 2008); *see also* Okla. Stat. tit. 60, § 175.18 ("The party in whose favor the cause of action has accrued may sue the trustee in his representative capacity . . . ."); Okla. Stat. tit. 60, § 175.24(A)(5) ("In the absence of contrary or limiting provisions in the trust agreement or a subsequent order or decree of a court of competent jurisdiction, the trustee of an express trust is authorized…[t]o compromise, contest, arbitrate, or settle any and all claims of or against the trust estate or the trustee as such."); *Coverdell v. Mid-S. Farm Equip. Ass'n*, 335 F.2d 9, 13 (6th Cir. 1964) ("As a general rule, it does appear that in suits against a trust, the trustee is the proper party defendant."); *Colorado Springs Cablevision, Inc. v.*

---

[2] In light of its bankruptcy proceeding, Plaintiffs dismissed One Pay Cloud, LLC from the litigation. [Doc. No. 32].

*Lively,* 579 F. Supp. 252, 253 (D. Colo. 1984) (a trust lacks capacity to be sued); *Irwin Union Collateral Inc. v. Peters & Burris, LLC*, No. CV09605-PHXMHM, 2009 WL 5184902, at *3 (D. Ariz. Dec. 22, 2009) ("The vast majority of jurisdictions appear to favor the traditional rule that trusts lack the capacity to sue or be sued."); *Ray Malooly Tr. v. Juhl*, 186 S.W.3d 568, 570 (Tex. 2006) ("suits against a trust must be brought against its legal representative, the trustee."). Accordingly, H-K Trust should be dismissed from this case.

### III. PLAINTIFFS' FIRST, SECOND, THIRD, SEVENTH AND EIGHTH CAUSES OF ACTION FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Thus, the "burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citation omitted).

### A. Plaintiffs' claims against these Movants for breach of contract fail to state a claim upon which relief may be granted.

In their first claim for breach of contract, Plaintiffs fail to allege any contract that Hannelius or Knight entered with them. Instead, the Plaintiffs allege that "in his capacity as beneficial owner of EFT, Transact First, and EnComPay, Hannelius entered EFT,

9

Transact First and EnComPay into contracts with SNB" (Complaint, ¶ 150) and that "certain Business Defendants" breached their contracts by operating marijuana related businesses and/or cashless ATMs" (*id.*, ¶ 154) and "violated anti-money laundering laws" (*id.*, ¶ 157). In their second claim, Plaintiffs allege that EFT, Transact First, and EnComPay, "acting through Mr. Hannelius" breached their contracts with SNB. *Id.* at ¶ 161.  In their third claim, Plaintiffs allege that Pepper Pay, "acting through Mr. Hannelius" breached its contract with SNB. *Id.* at ¶ 168.

Plaintiffs do not allege that Knight executed or breached any contract with them. As for the claims against Hannelius, Plaintiffs allege that the subject contracts were with Business Defendants and that Hannelius was acting on behalf of those entities. They do not allege that Hannelius entered or breached any of those contracts.

Plaintiffs' purported breach of contract claims against Hannelius and Knight are legally defective and should be dismissed as a matter of law because contracts are binding only upon parties thereto. *Drummond v. Johnson,* 643 P.2d 634, 639 (Okla. 1982). Corporations and their owners are separate entities and "a contract made with a known agent for a disclosed principal is a contract with the principal alone." *Tyree v. Cornman,* 453 P.3d 497, 504 (Okla. Civ. App. 2019) (quoting *Bane v. Anderson, Bryant & Co.*, 786 P.2d 1230, 1234 (Okla. 2019)).  When the contract is between the plaintiff and a corporation, the officer who signed the contract on behalf of the corporation is not liable for the breach of such contract. *Seitsinger v. Docum Pontiac, Inc.,* 894 P.2d 1077, 1080 (Okla. 1995).  Accordingly, the breach of contract claims against Hannelius and Knight should be dismissed.

### B. Plaintiffs' claim for tortious interference fails because there are no allegations of an impaired economic relationship.

Plaintiffs' seventh claim is for tortious interference against all defendants. In paragraphs 223 through 229 of the Complaint, Plaintiffs set forth their specific allegations as to tortious interference but fail to allege the critical component necessary to state a claim for tortious interference: a valid business expectancy. *Hetronic Int'l, Inc. v. Rempe*, 99 F. Supp. 3d 1341, 1350 (W.D. Okla. 2015). Instead, Plaintiffs simply allege that they had to "investigate and explain fraudulent and otherwise improper transactions as part of multiple ongoing government investigations and examinations." Complaint, ¶ 224. Nowhere do Plaintiffs allege that any conduct of any defendant led to Plaintiffs losing a valid business expectancy.

Oklahoma "recognizes a tortious interference claim with a contractual or business relationship if the plaintiff can prove (1) the interference was with an existing contractual or business right; (2) such interference was malicious and wrongful; (3) the interference was neither justified, privileged nor excusable; and (4) the interference proximately caused damage." *Wilspec Technologies, Inc. v. DunAn Holding Group, Co., Ltd.*, 204 P.3d 69, 74 (Okla. 2009) (citations omitted). "To show the existence of a valid business relationship or expectancy, '[defendant] must show either that prospective economic advantage would have been achieved had it not been for such interference or that there was, in view of all the circumstances, a reasonable assurance thereof.'" *Hetronic Intern., Inc. v. Rempe*, 99 F.Supp.3d 1341, 1350 (citing *Optima Oil & Gas Co., L.L.C. v. Mewbourne Oil Co.*, 2009 WL 1773198, at *8 (W. D. Okla. 2009)) (other citations omitted). At its core, a claim for

11

tortious interference with prospective economic relationship "involves interference with some type of reasonable expectation of profit" and "interference with a contractual relationship results in loss of a property right." *Overbeck v. Quaker Life Ins. Co.*, 757 P.2d 846, 847-8 (Okla. Civ. App. 1984).

Here, just as in *Hetronic*, the Complaint "contains no allegations showing [Plaintiffs] had a 'reasonable assurance' of obtaining the prospective business relations" with anyone. *Id.* at 1350. "Neither does [it] identify which prospective customer relationships were interfered with or how the actions of [any of the Movants] caused the interference." *Id.* Indeed, Plaintiffs fail to specify a singular contract or business expectation that was interfered with by any of Movants. Because Plaintiffs did not plead any prospective or actual customer relationships with anyone that were terminated as a result of Movants' conduct, let alone even allege that Plaintiffs had such relationships, Plaintiffs failed to state a tortious interference claim. Therefore, Plaintiffs' seventh claim should be dismissed. Fed. R. Civ. P. 12(b)(6).

### C. Plaintiffs' claim for violation of the Oklahoma Deceptive Trade Practices Act fails because Plaintiffs and Movants are not competitors.

Plaintiffs' eighth claim – violation of the Oklahoma Deceptive Trade Practices Act, Okla. Stat. tit. 78, § 51 *et seq.* ("ODTPA") – fails because Movants are not in competition with Plaintiffs. "It has been definitively established that [the Deceptive Trade Practices Act] ***protect[s] competing business interests*** and do[es] not present a basis for suit by consumers." *Conatzer v. American Mercury Insurance Company, Inc.*, 15 P.3d 1252, 1254 (Okla. Civ. App. 2000) (emphasis added). Thus, in *Thomas v. Metropolitan Life Ins. Co.*,

540 F. Supp. 2d 1212 (W. D. Okla. 2008) the court dismissed the plaintiffs' claim for violation of the ODTPA because "there are no allegations that plaintiffs are businesses in competition with [defendant] as required by the ODTPA." *Id*., at 1228. The district court further denied leave to amend because "even if amendment were allowed, plaintiffs could not allege that they are competitors of [defendant]." *Id*.

Here, Plaintiffs fail to allege they are in competition with or have competing business interests against any of the Movants. Moreover, based upon Plaintiffs' allegations of illegal activity, it is doubtful Plaintiffs would ever allege that it was in competition with Movants. Accordingly, Plaintiffs' eighth claim should be dismissed without leave to amend.

Date: July 26, 2024                                              Respectfully submitted,

/s/ *Seth A. Day*
Jon Epstein, OBA No. 13274
Seth A. Day, OBA No. 20670
Carson Glass Lamle, OBA No. 32876
Littleton T. Ellett, IV, OBA No. 34644
**HALL, ESTILL, HARDWICK, GABLE, GOLDEN & NELSON, P.C.**
100 North Broadway, Suite 2900
Oklahoma City, OK  73102
Telephone:  (405) 553-2828
Facsimile:  (405) 553-2855
jepstein@hallestill.com
sday@hallestill.com
clamle@hallestill.com
tellett@hallestill.com
**ATTORNEYS FOR SPECIALLY APPEARING MOVANTS**

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 26, 2024, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Ryan E. Price
Lawrence D. Rosenberg
Donald Shandy
Evan Vincent

                                                      /s Seth A. Day
                                                      Seth A. Day

20421580.1:014461.00001