# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

Shattuck Bancshares, Inc., and SNB
Bank, N.A.,

      Plaintiffs,

v.

Eric Hannelius, Michael Shvartsman,
Oksana Moore, Karla Knight, Elena
Popova, Justin Soulen, Bill My Bnk,
LLC, BT Assets Group, Inc., EFT
Business Services, LLC, EnComPay,
Inc., Hannelius-Knight Family Trust,
MG Family Trust, OST, LLC, Pepper
Pay, LLC, Rocket Holdings, LLC, Salt
Money, Inc., Skylight Business Services,
LLC, Transact First, Inc., and
Transaction Processing Services, Inc.,

      Defendants.

Case No. 5:24-cv-00677-J

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, IMPROPER SERVICE, AND FAILURE TO STATE A CLAIM

# TABLE OF CONTENTS

**Page**

FACTUAL BACKGROUND ................................................................................. 1

ARGUMENT .................................................................................................... 4

I.     The Individual Movants Are Subject to Personal Jurisdiction in Oklahoma. ......... 5

     A.     The Individual Movants Have Sufficient Minimum Contacts with Oklahoma. ........................................................................................ 6

     B.     Exercising Jurisdiction over the Individual Movants Comports with Traditional Notions of Fair Play and Substantial Justice. ........................... 9

II.     MG Family Trust Is A Proper Defendant ............................................. 12

III.     Plaintiffs Properly Served Movants. ................................................... 13

     A.     Movant Justin Soulen ................................................................ 15

     B.     Movant Oksana Moore ............................................................... 15

     C.     Movants Michael Shvartsman and MG Family Trust ............................. 17

     D.     Even Were the Court Find Any Technical Defects in Plaintiffs' Service Attempts, Movants Should Not Be Dismissed from this Action. ................................................................................... 18

IV.     Plaintiffs Have Pleaded Sufficient Facts to State a Claim on Their Seventh and Eighth Causes of Action. ................................................................ 19

     A.     Plaintiffs Have Sufficiently Pleaded Their Tortious Interference Claim. .................................................................................... 19

     B.     Plaintiffs Have Sufficiently Pleaded Their Claim Under the Oklahoma Deceptive Trade Practices Act. ..................................................... 21

     C.     Even Were the Court to Find Plaintiffs Did Not Sufficiently Plead Their Seventh and Eighth Causes of Action, It Should Grant Plaintiffs Leave to Amend Their Complaint. .............................................. 22

CONCLUSION ............................................................................................... 23

# <u>TABLE OF AUTHORITIES</u>

**Page**

**CASES**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................. 19

*AST Sports Sci., Inc. v. CLF Distrib. Ltd.*,
   514 F.3d 1054 (10th Cir. 2008) ....................................................... 6, 8, 9, 10

*Beissel v. W. Flyer Express, LLC*,
   No. CIV-21-903, 2021 U.S. Dist. LEXIS 189668 (W.D. Okla. Oct. 1,
   2021) .......................................................................................................... 21

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) .............................................................................. 9, 10

*Burnett v. Mortg. Elec. Registration Sys., Inc.*,
   706 F.3d 1231 (10th Cir. 2013) ................................................................. 19

*Conatzer v. American Mercury Ins. Co., Inc.*,
   15 P.3d 1252 (Okla. Civ. App. 2000) ........................................................ 21

*Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*,
   514 F.3d 1063 (10th Cir. 2008) ................................................................... 5

*Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*,
   618 F.3d 1153 (10th Cir. 2010) ..................................................... 5, 6, 9, 10

*Graff v. Kelly*,
   814 P.2d 489 (Okla. 1991) ......................................................................... 13

*Gray v. Acadia Healthcare Co.*,
   No. 19-cv-00338, 2020 U.S. Dist. LEXIS 187956 (E.D. Okla. Oct. 9,
   2020) .......................................................................................................... 21

*Hukill v. Okla. Native Am. Domestic Violence Coal.*,
   542 F.3d 794 (10th Cir. 2008) ................................................................... 13

*Intercon, Inc. v. Bell Atl. Internet Sol.*,
    205 F.3d 1244 (10th Cir. 2000) ................................................................. 5

*Lee & Eastes, Inc. v. Pub. Serv. Comm'n*,
    52 Wash. 2d 701 (1958) ........................................................................... 20

*Monge v. RG Petro-Mach. (Grp.) Co.*,
    701 F.3d 598 (10th Cir. 2012) ................................................................... 5

*Newsome v. Gallacher*,
    722 F.3d 1257 (10th Cir. 2013) ............................................................ 8, 9

*OMI Holdings, Inc. v. Royal Ins. Co. of Can.*,
    149 F.3d 1086 (10th Cir. 1998) ................................................................. 5

*Overbeck v. Quaker Life Insurance Co.*,
    757 P.2d 846 (Okla. Civ. App. 1984) .................................................. 19, 20

*Pell v. Azar Nut Co.*,
    711 F.2d 949 (10th Cir. 1983) ................................................................. 18

*Pepe Tools, Inc. v. Sunstone Eng'g, LLC*,
    No. CIV-23-907, 2024 U.S. Dist. LEXIS 115447 (W.D. Okla. July 1,
    2024) ......................................................................................................... 5

*Ponca Tribe of Indians v. Cont'l Carbon Co.*,
    No. CIV-05-445-C, 2006 U.S. Dist. LEXIS 71471 (W.D. Okla. Sept.
    29, 2006) ............................................................................................ 14, 15

*Pounds v. DOI*,
    9 F. App'x 820 (10th Cir. 2001) .............................................................. 18

*Pro Axess, Inc. v. Orlux Distribution, Inc.*,
    428 F.3d 1270 (10th Cir. 2005) ................................................................. 6

*Rusakiewicz v. Lowe*,
    556 F.3d 1095 (10th Cir. 2009) ................................................................. 6

*Sandona v. Cle Elum*,
    37 Wash.2d 831 (1951) ............................................................................ 20

*SEC v. Beisinger Indus. Corp.*,
    552 F.2d 15 (1st Cir. 1977) .......................................................... 14

*SEC v. Shields*,
    744 F.3d 633 (10th Cir. 2014) ..................................................... 19

*TH Agric. & Nutrition, LLC v. Ace Eur. Grp. Ltd.*,
    488 F.3d 1282 (10th Cir. 2007) ........................................... 5, 6, 11

*Thomas v. Metro. Life Ins. Co.*,
    540 F. Supp. 2d 1212 (W.D. Okla. 2008) ................................... 21

*United States v. Shvartsman*,
    No. 1:23-cr-307 (S.D.N.Y.) .......................................................... 17

*Vance v. Fed. Nat'l Mortg. Ass'n*,
    988 P.2d 1275 (Okla. 1999) .......................................................... 13

*Wallace v. Microsoft Corp.*,
    596 F.3d 703 (10th Cir. 2010) ...................................................... 18

**STATUTES**

Bank Secrecy Act, 31 U.S.C. §§ 5311-5336 .................................... 1, 2

Office of the Comptroller of the Currency Implementing Regulations, 12
    C.F.R. §§ 21.11 and 21.21 ............................................................. 1

Oklahoma Deceptive Trade Practices Act, Okla. Stat. tit. 78, §§ 51-56 ................... passim

Okla. Stat. tit. 12, § 182 ............................................................... 12, 18

Okla. Stat. tit. 12, § 2004 ................................................. 13, 14, 15, 16

Okla. Stat. tit. 60, § 175.18 ............................................................... 12

**RULES**

Fed. R. Civ. P. 4 ............................................................................. 13

Fed. R. Civ. P. 4(e)(1) ............................................................... 13, 14

Fed. R. Civ. P. 8(a)(2) ........................................................................................... 19

Fed. R. Civ. P. 15(a)(2) ......................................................................................... 23

Plaintiffs Shattuck Bancshares, Inc., and SNB Bank, N.A. ("SNB") (collectively, "Plaintiffs"), by and through undersigned counsel, respond to and request this Court deny Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, Improper Service, and Failure to State a Claim. Defendants' arguments are merely attempts improperly to delay resolution of this case and are entirely meritless. Defendants have more than sufficient contacts with this forum to satisfy the personal jurisdiction analysis, and exercising jurisdiction would not offend traditional notions of fair play and substantial justice. Moreover, under Oklahoma law, Plaintiffs have properly named MG Family Trust as a defendant and have, at a minimum, substantially complied with the requirements for service. As for Plaintiffs' claims, Defendants interfered with Plaintiffs' relationships with federal regulators and agencies, impairing Plaintiffs' right to operate its business. Furthermore, because Plaintiffs are not consumers and they have competing business interests with Defendants, Plaintiffs are not excluded from protection under the Oklahoma Deceptive Trade Practices Act.

## FACTUAL BACKGROUND

Plaintiffs' claims arise from Defendants' numerous misrepresentations and improper transactions over the course of several years. [Doc. No. 1-1]. As detailed in the Petition, to comply with the anti-money laundering, counter terrorist financing, suspicious activity reporting, and other obligations under the Bank Secrecy Act ("BSA"), 31 U.S.C. §§ 5311-5336, and implementing regulations, 12 C.F.R. §§ 21.11 and 21.21, Plaintiffs carefully examined customers that operated marijuana-related businesses and/or cashless

ATMs.  [Doc. No. 1-1, ¶¶ 32-35, 38].  Marijuana-related businesses have special reporting and other requirements that banks must follow, and cashless ATMs allow operators to disguise the true nature of their transactions.  *Id.*  To guard against such issues, Plaintiffs required new customers to complete an Account Practice Questionnaire, on which they represented whether or not they were marijuana-related businesses.  *Id.* ¶¶ 39, 43, 46, 51, 54, 56-58, 60-62, 70.  Plaintiffs relied on these representations and other information to determine their reporting and other obligations under the BSA.

In completing the Questionnaires and in other conversations, however, Defendants falsely represented that they did not operate marijuana-related businesses and/or cashless ATMs.  *Id.* ¶¶ 31, 39-43, 46, 51, 54, 56-58, 60-62, 67, 68, 70.  Furthermore, Defendants engaged in numerous misrepresentations and improper and illegal transactions, including transferring proceeds from insider trading activities and requesting funds from other banks without authorization from account holders.  *Id.* ¶¶ 44, 45, 80, 111-29.  As a result of these misrepresentations and improper and illegal transactions, and despite their efforts to comply with BSA reporting and other requirements, Plaintiffs were forced to incur substantial damages in an effort to comply with resulting government investigations.  *Id.* at 40.  Consequently, Plaintiffs filed suit in the District Court of Ellis County, Oklahoma, on May 24, 2024, raising claims for breach of contract, fraud, negligent misrepresentation, deceit, tortious interference, and deceptive trade practices.  *Id.*

After filing, Plaintiffs encountered significant difficulties serving Defendants. Plaintiffs attempted to serve all Defendants, except for Karla Knight and OST, LLC ("OST"), at an Aventura, Florida address, which was provided to SNB when Defendants'

accounts were opened.  Ex. A.  The individual who answered the door, however, refused to accept service and removed Plaintiffs' process server from the premises.  *Id.*  Plaintiffs simultaneously attempted to serve Defendants Eric Hannelius, Karla Knight, Hannelius-Knight Family Trust, and OST at an address in Yarmouth, Maine.  After several unsuccessful attempts, the Maine process server made contact with Mr. Hannelius via text message, and at that point, Mr. Hannelius instructed process be delivered to the Aventura, Florida address.  Ex. B.  However, despite Mr. Hannelius's instruction, the individuals at the Aventura, Florida address again refused service.  Ex. A.

As a result of these refusals, Plaintiffs then attempted to serve Defendants Michael Shvartsman, Oksana Moore, and Justin Soulen at their home addresses and Defendant MG Family Trust at Mr. Shvartsman's home address.  According to the affidavits of service, Plaintiffs' process server served Mr. Shvartsman and MG Family Trust on June 15, 2024, at Mr. Shvartsman's Sunny Isles Beach, Florida address.  Exs. C-D.  That same day, Plaintiffs' process server also served Ms. Moore at her Sunny Isles Beach, Florida address, Ex. E, and served Mr. Soulen's father at Mr. Soulen's North Miami Beach, Florida address, Ex. F.

On July 3, 2024, this case was removed to federal court, and one week later, Mr. Shvartsman, Ms. Moore, Mr. Soulen, and MG Family Trust (collectively, "Movants") filed their Special Appearance and Motion to Dismiss for Lack of Personal Jurisdiction, Improper Service, and Failure to State a Claim.  [Doc. No. 27].  With respect to personal jurisdiction, Movants claim Mr. Shvartsman, Ms. Moore, and Mr. Soulen (collectively, "Individual Movants") lack minimum contacts with Oklahoma.  *Id.* at 3-6.  They also

contend MG Family Trust was improperly named as a defendant, *id.* at 7-8, and they were all improperly served, *id.* at 8-11.  As to the causes of action, Movants assert Plaintiffs have failed to plead necessary elements of two claims.  *Id.* at 11-14.

After learning that Movants were contesting service, Plaintiffs attempted to re-serve Movants at the aforementioned addresses.  While Ms. Moore was re-served on July 20, 2024, Ex. G, Mr. Shvartsman was not present at his address, and thus, he and MG Family Trust were unable to be re-served.  Similarly, Mr. Soulen was also not present at his address and could not be re-served.  Plaintiffs have now attempted to serve Mr. Shvartsman, MG Family Trust and Mr. Soulen by certified mail.

## **ARGUMENT**

Plaintiffs request this Court deny Movants' motion.  Individual Movants have more than enough contacts with Oklahoma to satisfy the personal jurisdiction analysis, and exercising that jurisdiction would not offend traditional notions of fair play and substantial justice in the least.  Moreover, Plaintiffs have properly named MG Family Trust as a defendant and properly served Movants.  And Plaintiffs have at least substantially complied with the Oklahoma rules for service.

As to the causes of action, Plaintiffs sufficiently pleaded that Defendants interfered with their right to lawfully operate their businesses, which stems from and depends upon their relationship with federal regulators and agencies.  In addition, Plaintiffs are not excluded from protection under the Oklahoma Deceptive Trade Practices Act ("ODTPA") because they are not consumers and they have competing business interests with Defendants.  Accordingly, the Court should deny Movants' motion.

## I.    The Individual Movants Are Subject to Personal Jurisdiction in Oklahoma.

"Under Oklahoma law, the personal jurisdiction inquiry is simply a due process analysis." *Pepe Tools, Inc. v. Sunstone Eng'g, LLC*, No. CIV-23-907, 2024 U.S. Dist. LEXIS 115447, at *4 (W.D. Okla. July 1, 2024) (citing *Intercon, Inc. v. Bell Atl. Internet Sol.*, 205 F.3d 1244, 1247 (10th Cir. 2000), and *Monge v. RG Petro-Mach. (Grp.) Co.*, 701 F.3d 598, 613 (10th Cir. 2012)). "The due process analysis consists of two steps." *Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159 (10th Cir. 2010). "First, [courts] consider 'whether the defendant has such minimum contacts with the forum state 'that he should reasonably anticipate being haled into court there.'" *Id.* at 1159-60 (quoting *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998)). "Second, if the defendant has minimum contacts within the forum state, [courts] determine 'whether the exercise of personal jurisdiction over the defendant offends "traditional notions of fair play and substantial justice."'" *Id.* at 1160 (quoting *OMI Holdings*, 149 F.3d at 1091).

While courts may exercise general or specific personal jurisdiction, Plaintiffs do not rely on general jurisdiction here, and accordingly, only specific jurisdiction is at issue. "Under the specific-jurisdiction requirement, a plaintiff satisfies the minimum-contacts standard by showing that (1) the defendant has 'purposefully availed itself of the privilege of conducting activities or consummating a transaction in the forum state'; and (2) 'the litigation results from alleged injuries that arise out of or relate to those activities.'" *Id.* at 1160 (first quoting *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008) (emphasis omitted) (internal quotation marks omitted); and then quoting *TH Agric. & Nutrition, LLC v. Ace Eur. Grp. Ltd.*, 488 F.3d 1282, 1287 (10th Cir. 2007)).

5

Then, to determine whether the exercise of personal jurisdiction complies with traditional notions of fair play and substantial justice, courts examine the following five factors: "(1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies." *Id.* at 1161 (quoting *Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1279-80 (10th Cir. 2005) (internal quotation marks omitted)).

"Where a district court considers a pre-trial motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." *Id.* at 1159 (quoting *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1056-57 (10th Cir. 2008)). "The plaintiff may carry this burden 'by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant.'" *Id.* (quoting *TH Agric. & Nutrition*, 488 F.3d at 1286 (internal quotation marks omitted)). "All factual disputes are resolved in favor of the plaintiff [] when determining the sufficiency of this showing." *Id.* (alteration in original) (quoting *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1100 (10th Cir. 2009)).

### A.    The Individual Movants Have Sufficient Minimum Contacts with Oklahoma.

Turning first to minimum contacts, the Individual Movants "purposefully availed [themselves] of the privilege of conducting activities or consummating a transaction in

6

[Oklahoma]" and "[this] litigation result[ed] from alleged injuries that arise out of or relate to those activities." *Id.* at 1160. As detailed in the Petition, Mr. Shvartsman opened accounts at SNB for Defendants BT Assets Group, Inc. ("BT"), EnComPay, Inc. ("EnComPay"), MG Family Trust, Rocket Holdings, LLC ("Rocket Holdings"), Skylight Business Services, LLC ("Skylight"), and Transact First, Inc. ("Transact First") [Doc. No. 1-1 ¶¶ 55-58, 61, 62] and transferred proceeds that are believed to relate to his criminal charges through a Transact First account at SNB, *id.* ¶ 80. As part of opening some of these accounts, Mr. Shvartsman falsely represented on SNB's Account Practice Questionnaires that BT, EnComPay, MG Family Trust, Rocket Holdings, and Skylight were not marijuana-related businesses. *Id.* ¶¶ 56-58, 61, 62. Moreover, Mr. Shvartsman at times communicated with Plaintiffs on a daily basis. Ex. H.

Similarly, Ms. Moore falsely represented on SNB's Account Practice Questionnaires that Defendants Bill My Bnk, LLC ("Bill My Bnk"), BT, EFT Business Services, LLC ("EFT"), EnComPay, MG Family Trust, Rocket Holdings, Salt Money, Inc. ("Salt Money"), Skylight, Transact First, and Transaction Processing Services, Inc. ("TPS"), were not marijuana-related businesses. *Id.* ¶¶ 39, 43, 46, 51, 54, 56, 57, 58, 62, 70. Moreover, Ms. Moore conducted numerous unauthorized transactions through various accounts at SNB, *id.* ¶¶ 111-29, and had daily communication with Plaintiffs. Ex. H.

Finally, in Mr. Soulen's email communications with SNB's Assistant Vice President and Cashier, Mr. Soulen falsely represented that Defendant Pepper Pay, LLC ("Pepper Pay"), was not a marijuana-related business, *id.* ¶ 67, and more broadly, communicated with Plaintiffs on a monthly basis. Ex. H.

In response to this multitude of contacts, Movants raise several arguments, none of which is persuasive.  First, they contend that the Individual Movants were acting in an employment capacity, and thus, the "no-imputed-contacts rule" shields their actions from the minimum contacts analysis.  But this line of reasoning misunderstands the no-imputed-contacts rule, which states that "[j]urisdiction over a corporation in a particular forum does not *automatically* confer jurisdiction over that corporation's employees."  *Newsome v. Gallacher*, 722 F.3d 1257, 1275 (10th Cir. 2013) (emphasis added).  Instead, rather than simply looking at the corporation's contacts, "[e]ach defendant's contacts with the forum State must be assessed *individually*."  *Id.* at 1276 (emphasis added).  When that is done, without considering any contacts by other constituents of the Business Defendants, Individual Movants' contacts easily satisfy the minimum contacts analysis.  As detailed above, Mr. Shvartsman opened accounts with SNB, provided false information when doing so, and transferred funds related to his criminal activity through an account, all while at times being in daily communication with Plaintiffs.  Ms. Moore also provided false information regarding the accounts, conducted numerous unauthorized transactions, and communicated daily with Plaintiffs.  Finally, while also communicating with Plaintiffs on a monthly basis, Mr. Soulen made false representations regarding Pepper Pay.  That these individuals were acting in their employment capacity makes no difference; their direct actions establish the minimum contacts necessary for personal jurisdiction.

Next, in an attempt to lessen the significance of their contacts with SNB, Movants assert that Individual Movants have never been to Oklahoma.  But as the Supreme Court has noted, "[i]t is an inescapable fact of modern commercial life that a substantial amount

of business is transacted solely by mail and wire communication across state lines, thus

obviating the need for physical presence within the State in which business is conducted."

*Ast Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1059 (10th Cir. 2008) (quoting

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).  As a result, "[s]o long as a

commercial actor's efforts are purposefully directed toward residents of another State, [the

Supreme Court] [has] consistently rejected the notion that an absence of physical contacts

can defeat personal jurisdiction there."  *Id.*  Individual Movants' lack of physical presence,

consequently, cannot defeat personal jurisdiction, given their numerous contacts with the

forum.

Finally, with respect to Mr. Soulen, Movants assert "[r]epresenting a client residing

in a distant forum is not necessarily a purposeful availment of that distant forum's law and

privileges."  [Doc. No. 27 at 6 (citing *Newsome*, 722 F.3d at 1280)].  But *Newsome*, which

discusses whether a court can assert jurisdiction over a company's out-of-state-counsel, is

simply inapplicable to this case.  Plaintiffs are not suing Mr. Soulen in his capacity as

Pepper Pay's counsel; Plaintiffs are suing Mr. Soulen for his fraudulent representations to

Plaintiffs.  Taken together with his monthly communications with Plaintiffs, Mr. Soulen's

contacts satisfy the minimum contacts analysis.

**B.    Exercising Jurisdiction over the Individual Movants Comports with**
**Traditional Notions of Fair Play and Substantial Justice.**

Considering the five factors from *Employers Mutual*, exercising jurisdiction over

Movants comports with traditional notions of fair play and substantial justice.  With respect

to the burden on the defendant, even accounting for the distance between Florida and

Oklahoma, "modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity." *Emps. Mut.*, 618 F.3d at 1162 (quoting *Burger King*, 471 U.S. at 474 (internal quotation marks omitted)). Accordingly, the overall impact of this factor is mitigated given advances in modern transportation and communication.

As to the second factor—Oklahoma's interest in resolving this dispute—"[s]tates have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors." *Id.* (quoting *AST Sports Sci.*, 514 F.3d at 1062 (internal quotation marks omitted)). Plaintiffs have their principal place of business in Oklahoma. Without a forum to resolve disputes with out-of-state actors, Plaintiffs will be significantly hindered from engaging in business with people or businesses that reside outside of Oklahoma. Moreover, out-of-state actors could be incentivized to take advantage of Oklahoma businesses, knowing their victims would have to incur significant expenses to file suit outside the state. This factor, therefore, weighs in favor of Plaintiffs and exercising jurisdiction over Movants.

The next *Employers Mutual* factor is a plaintiff's interest in convenient and effective relief. Although another forum may be able to provide effective relief, state or federal court in Oklahoma is the most convenient location for Plaintiffs. As previously stated, Plaintiffs have their principal place of business in the Western District of Oklahoma, and while moving this case to another jurisdiction may not necessarily prevent its continuation, Plaintiffs would be significantly inconvenienced in their efforts to obtain relief. As a result, this factor also weighs in favor of Plaintiffs.

Turning to the fourth *Employers Mutual* factor—the interstate judicial system's interest in obtaining the most efficient resolution of controversies—the key inquires "are the location of the witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation." *Id.* at 1163 (quoting *TH Agric. & Nutrition*, 488 F.3d at 1296 (internal quotation marks omitted)). Here, all Plaintiffs' witnesses and documents are located in Oklahoma. Oklahoma state law governs this case, and should Plaintiffs be forced to pursue this action against Individual Movants in another forum, piecemeal litigation would result as the remaining Defendants do not contest personal jurisdiction.[1] Moreover, Plaintiffs and Pepper Pay entered into an agreement, in which Pepper Pay agreed to "submit[] to the jurisdiction of the courts of [Oklahoma]." [Doc. No. 1-1 at 71]. Although Pepper Pay is not involved in this motion, requiring Plaintiffs to file suit against the Individual Movants in another forum would again give rise to piecemeal litigation. Consequently, judicial efficiency counsels in favor of litigating this case in Oklahoma. The final *Employers Mutual* factor—the shared interest of the several states in furthering fundamental social policies—is not relevant in this case and is therefore neutral.

On balance, therefore, because the second, third, and fourth factors weigh in favor of exercising jurisdiction, doing so would not offend traditional notions of fair play and

---

[1] Plaintiffs recognize that other Defendants in this case have moved to transfer venue to the Southern District of Florida, where presumably Individual Movants would not contest personal jurisdiction. [Doc. No. 19]. However, for the reasons stated in Plaintiffs' response to that motion, transfer would be inappropriate.

substantial justice.  Taken together with their substantial contacts, Individual Movants are thus subject to jurisdiction in the Western District of Oklahoma.

## II.    MG Family Trust Is A Proper Defendant

Movants next assert MG Family Trust lacks the capacity to be sued.  According to Movants, Plaintiffs instead should have sued Mr. Shvartsman, a trustee, in his representative capacity.  However, Defendants cite no controlling case law for this assertion, and their cited statutory provisions provide no further support.

As Defendants acknowledge in their motion, Okla. Stat. tit. 60, § 175.18 merely provides that a plaintiff "*may* sue the trustee in his representative capacity." (emphasis added).  There is, however, no requirement that a plaintiff must do so.  Moreover, Okla. Stat. tit. 12, § 182, entitled "Unincorporated Associations and Trusts—Suits against— Service of Process," expressly allows suits against trusts: "When any two or more persons associate themselves together and transact business for gain or speculation under a particular appellation, not being incorporated, they may be sued *by such appellation* without naming the individuals composing such association." (emphasis added).

Accordingly, contrary to Movants' assertion, nothing in Oklahoma law prevents Plaintiffs from bringing suit against MG Family Trust itself rather than a trustee, such as Mr. Shvartsman.

Moreover, given that Plaintiffs have sued Mr. Shvartsman, and served him both in his independent capacity and as a trustee, Movants' argument to dismiss the trust simply attempts to elevate form (albeit an incorrect one) over substance.

12

### III.    Plaintiffs Properly Served Movants.

Under Federal Rule of Civil Procedure 4, "an individual . . . may be served . . . by . . . following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(e)(1). In other words, both before and after removal to federal court, Plaintiffs were able to serve under the Oklahoma rules. Pursuant to those rules, "service of the summons and petition may be made outside this state . . . by personal delivery in the manner prescribed for service within this state." Okla. Stat. tit. 12, § 2004(E)(2)(a). Service by personal delivery, in turn, may be made "upon an individual . . . by delivering a copy of the summons and of the petition personally or by leaving copies thereof at the person's dwelling house or usual place of abode with some person then residing therein who is fifteen (15) years of age or older." *Id.* § 2004(C)(1)(c)(1).

To determine the sufficiency of service, Oklahoma courts ask three questions: "(1) Is there a statute authorizing the method of service employed?; (2) Have the requirements of the statute been observed?; and (3) Have fundamental due process requirements been met?" *Hukill v. Okla. Native Am. Domestic Violence Coal.*, 542 F.3d 794, 799 (10th Cir. 2008) (quoting *Graff v. Kelly*, 814 P.2d 489, 493 (Okla. 1991)). With respect to the second question, only "substantial compliance" is required for courts to exercise jurisdiction. *Id.* at 798 (citing *Graff*, 814 P.2d at 493). As for due process, "a challenger must prove that the departure offends articulated standards of due process and hence deprives it of a fundamental right to notice." *Vance v. Fed. Nat'l Mortg. Ass'n*, 988 P.2d 1275, 1280 (Okla. 1999).

As discussed above, the Oklahoma rules plainly authorize service by personal delivery,[2] Okla. Stat. tit. 12, § 2004(C)(1)(c)(1), and Movants have not raised any due process challenges regarding notice. Accordingly, the parties' dispute turns on whether Plaintiffs' service attempts substantially complied with the Oklahoma rules. For the reasons discussed below, that question should be answered in the affirmative.

Before turning to each individual, however, Plaintiffs note Movants have evaded service throughout this case. As outlined above, Plaintiffs initially attempted to serve Movants, along with several other Defendants, at an Aventura, Florida address, which was provided to Plaintiffs at the time Defendants' accounts were opened. Ex. A. Despite this, an individual at the address refused to accept service, and even after Plaintiffs received instructions from Mr. Hannelius to bring the documents to that address, service was still refused. *Id.* These service attempts, along with the several ensuing ones mentioned below, have cost Plaintiffs a significant amount of time and money. Moreover, as evidenced by this motion and Movants' silence on the issue, Plaintiffs have clearly provided notice to the Movants and complied with the purpose of service, which "is to give a party notice of the proceedings in sufficient time to prepare an adequate defense." *Ponca Tribe of Indians v. Cont'l Carbon Co.*, No. CIV-05-445-C, 2006 U.S. Dist. LEXIS 71471, at *12 (W.D. Okla. Sept. 29, 2006) (quoting *SEC v. Beisinger Indus. Corp.*, 552 F.2d 15, 20 (1st Cir.

---

[2] In previous discussions, Movants' counsel indicated Florida law governed whether service in this case was proper. However, while Plaintiffs had the option of serving under the Florida rules, Fed. R. Civ. P. 4(e)(1); Okla. Stat. tit. 12, § 2004(E)(2)(b), they were also able to serve under the Oklahoma rules, as outlined above. Movants concede this point in their brief. [Doc. No. 27 at 8].

1977)).  Plaintiffs moreover have substantially complied with the service requirements under Oklahoma law for each individual, as detailed below.

### A.    Movant Justin Soulen

First, the process server executed service on Michael Soulen, Justin Soulen's father, on June 15, 2024, at 10:39 AM at Justin Soulen's North Miami Beach, Florida address. Ex. F.  Justin Soulen's father and mother were staying at the house to care for his minor children while he was away.  [Doc. No. 27 at 10].  While the parties do not dispute these underlying facts,[3] movants nevertheless contend that service was improper because Michael Soulen did not reside at the address.  However, § 2004(C)(1)(c)(1) only requires "leaving copies [of the summons and of the petition] at the person's dwelling house or usual place of abode with some person *then residing therein* who is fifteen (15) years of age or older."  There is no requirement that the person permanently reside at the location. Accordingly, given that Michael Soulen was residing at Justin Soulen's house at the time of service, Plaintiffs have substantially complied with the service requirements.

### B.    Movant Oksana Moore

Next, according to the process server's affidavit, Ms. Moore was served on June 15, 2024, at 11:14 AM at her Sunny Isles Beach, Florida address.  Ex. E at 1.  Before attempting service, the process server confirmed with a neighbor that Ms. Moore resided at the address.  *Id.*  When she opened the door, the process server informed her he had court

---

[3] A previous version of the process server's affidavit stated he served Justin Soulen. This was based on a misunderstanding at the time of service.  The process server's revised affidavit has been updated to reflect that he served Michael Soulen.

documents, at which point Ms. Moore closed the door on him.  *Id.*  Left with no other option, the process server announced he was leaving the documents outside leaned up against the door, clearly visible upon exiting.  *Id.* at 1, 4.

In an attempt to undermine the process server, Ms. Moore asserts, in her own competing affidavit, that she was not in residence at the time of service.  [Doc. No. 27-1 at 2].  But her affidavit fails to establish this fact.  While Ms. Moore claims to have been at the chiropractor when the process server attempted service at 11:14 AM, *id.* at 2, her attached text messages only demonstrate a request for an 11:00 AM appointment, *id.* at 9-10.  There is no confirmation that request was ever accepted.  Moreover, while Ms. Moore attaches evidence of payment to her chiropractor and a restaurant, these documents contain no indication of the time of payment.  *Id.* at 11-15.  Accordingly, in this instance, the preponderance of the evidence favors the process server's account.

Under that account, Plaintiffs substantially complied with the service requirements.  Although the process service was unable to physically hand the documents to Ms. Moore, that is only because she made it impossible by closing her door.  A defendant cannot be allowed to avoid proper service simply by refusing to acknowledge a process server.  Moreover, nothing in § 2004(C)(1)(c)(1) requires a process server to physically hand documents to a defendant.  The only requirement is "delivering a copy of the summons and of the petition personally," § 2004(C)(1)(c)(1), and Plaintiffs substantially complied with that provision.

Moreover, Plaintiffs reserved Ms. Moore on July 20, 2024.  Ex. G.  The process server again went to her address where a woman fitting her description opened the door

and then refused to accept the documents and closed the door; at that time the process server left the documents in front of her door and noted that she observed this through the eyehole in the door. Ex. G. Again, this service attempt substantially complied with Oklahoma law.

### C.    Movants Michael Shvartsman and MG Family Trust

Finally, according to the process server, Mr. Shvartsman and MG Family Trust were both served on June 15, 2024, slightly after 11:00 AM at Mr. Shvartsman's Sunny Isles Beach, Florida address. Exs. C-D. After entering the apartment building and speaking with an individual at the front desk, the process server confirmed Mr. Shvartsman's address and learned either Mr. Shvartsman or his brother, Gerald Shvartsman, was upstairs in the apartment. Ex. C at 1; Ex. D at 1. The process server then went up to the unit, which was under construction, and asked for Mr. Shvartsman. Ex. C at 1; Ex. D at 1. An individual responded, "yes," and requested the documents be left on a box. Ex. C at 1; Ex. D at 1.

Mr. Shvartsman, however, maintains neither he nor his brother were at the apartment that day. [Doc. No. 27-3 ¶ 12]. According to his declaration, the only individuals at the apartment would have been construction workers. *Id.* ¶ 13. Mr. Shvartsman moreover claims that he does not match certain aspects of the process server's description. *Id.* ¶ 15. Resolution of this dispute ultimately requires a credibility determination. To that end, Plaintiffs note Mr. Shvartsman recently pleaded guilty to securities fraud, casting serious doubt on his truthfulness. *United States v. Shvartsman*, No. 1:23-cr-307 (S.D.N.Y.).

Should the Court credit the process server's affidavit, Plaintiffs have clearly complied with the statutory requirements. A copy of the summons and petition were left with Mr. Shvartsman at his residence. Moreover, as Mr. Shvartsman is a trustee of MG Family Trust, such service was also proper on that entity. *See* Okla. Stat. tit. 12, § 182 ("[S]ervice may be had upon any common law trust . . . by service upon any one of such individuals as may be designated as trustee for said trust, the same as in any other civil action.").

**D.    Even Were the Court Find Any Technical Defects in Plaintiffs' Service Attempts, Movants Should Not Be Dismissed from this Action.**

Even were the Court to find any technical defects in Plaintiffs' service attempts, Movants should not be dismissed from this action. "The general rule is that 'when a court finds that service is insufficient but curable, it generally should quash the service and give the plaintiff an opportunity to re-serve the defendant.'" *Pounds v. DOI*, 9 F. App'x 820, 821 n.2 (10th Cir. 2001) (quoting *Pell v. Azar Nut Co.*, 711 F.2d 949, 950 n.2 (10th Cir. 1983)). Here, given that Plaintiffs have 120 days following removal to serve Movants, *Wallace v. Microsoft Corp.*, 596 F.3d 703, 706-07 (10th Cir. 2010), Plaintiffs can easily cure any insufficiency. Indeed, out of an abundance of caution, Plaintiffs have already taken steps to serve Movants by certified mail and publication.

In sum, Movants clearly have notice of this action, and despite Movants efforts to evade service, Plaintiffs, through the expense of considerable time and money, have served Movants in substantial compliance with Oklahoma law. Plaintiffs moreover have time to cure any technical defects and have even taken steps to serve Movants by certified mail

and publication.  Accordingly, no grounds exist for the Court to dismiss Movants from this action.

## IV.    Plaintiffs Have Pleaded Sufficient Facts to State a Claim on Their Seventh and Eighth Causes of Action.

A complaint must contain "a short and plain statement of [a] claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  When confronted with a motion to dismiss, courts "accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to the [non-moving party]."  *SEC v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014) (quoting *Burnett v. Mortg. Elec. Registration Sys., Inc*., 706 F.3d 1231, 1235 (10th Cir. 2013)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009)).

### A.    Plaintiffs Have Sufficiently Pleaded Their Tortious Interference Claim.

Movants erroneously claim that Plaintiffs lack a valid business expectancy for their tortious interference claim.  Movants fundamentally misrepresent the decision in *Overbeck v. Quaker Life Insurance Co.*, 757 P.2d 846, 847-48 (Okla. Civ. App. 1984), when they assert that "a claim for tortious interference with prospective economic relationship 'involves interference with some type of reasonable expectation of profit' *and* 'interference with a contractual relationship results [sic] in loss of a property right.'"  [Doc. No. 19 at 20 (emphasis added)].  The court in *Overbeck* is clear to distinguish between claims for interference with a prospective economic advantage and interference with contractual or business relations.  757 P.2d at 847.  Indeed, the court found that "[i]nterference with a

prospective economic advantage usually involves interference with some type of reasonable expectation of profit, whereas interference with a contractual relationship results in loss of a property right." *Id.* at 847-48. Thus, for Plaintiffs' claim here, it need only allege potential loss of a property right related to its business relationship with federal regulators.

As detailed in the Petition, Plaintiffs have made such allegations. In particular, the Movants' actions, omissions, and misrepresentations "interfered with SNB's relationships with federal banking regulators and the federal agencies involved in investigating the facts and circumstances of the accounts." [Doc. No. 1-1 ¶ 225]. And it was Movants who, through actions and omissions, undertook fraudulent and improper transactions about which Plaintiffs had no adequate notice or knowledge. These actions cast suspicion on and disadvantaged SNB with these regulators and agencies, which allow SNB to operate in exchange for its compliance with federal law. Movants' interference with those relationships, therefore, risked SNB losing its right to operate or having that right restricted, and "[t]he right to operate a lawful business is a property right." *Lee & Eastes, Inc. v. Pub. Serv. Comm'n*, 52 Wash. 2d 701, 704 (1958) (citing *Sandona v. Cle Elum*, 37 Wash.2d 831, 226 (1951)). Accordingly, inasmuch as Movants' actions have interfered with Plaintiffs' right to lawfully operate their business in compliance with federal law, Plaintiffs have sufficiently pleaded their tortious interference claim.

**B.**    **Plaintiffs Have Sufficiently Pleaded Their Claim Under the Oklahoma Deceptive Trade Practices Act.**

Movants' entire opposition to Plaintiffs' claim under the ODTPA, Okla. Stat. tit. 78, §§ 51-56, rests on the misguided idea that Movants do not have competing business interests with Plaintiffs.    Movants' cited cases explain that the ODTPA "protect[s] competing business interests and do[es] not present a basis for suit *by consumers*."    [Doc. No. 19 at 20 (emphasis added) (quoting *Conatzer v. American Mercury Ins. Co., Inc.*, 15 P.3d 1252, 1254 (Okla. Civ. App. 2000)]; *see also Thomas v. Metro. Life Ins. Co.*, 540 F. Supp. 2d 1212, 1228 (W.D. Okla. 2008) ("The complaint alleges wrongdoing to the plaintiffs by virtue of their status as *purchasers, or consumers*, of MetLife's proprietary products." (emphasis added)).    Other cases similarly bar ODTPA claims when brought *by consumers*.    *See, e.g.*, *Beissel v. W. Flyer Express, LLC*, No. CIV-21-903, 2021 U.S. Dist. LEXIS 189668, at *5 (W.D. Okla. Oct. 1, 2021) ("On the face of the Complaint, the underlying contract looks like a *consumer* contract." (emphasis added)); *Gray v. Acadia Healthcare Co.*, No. 19-cv-00338, 2020 U.S. Dist. LEXIS 187956, at *29 (E.D. Okla. Oct. 9, 2020) ("The Second Amended Complaint makes clear that Ms. Banuelos was a *consumer* of Defendants' services." (emphasis added)).    Plaintiffs, however, are not consumers, and thus, their claim is categorically different from those discussed in Movants' cited cases.

Moreover, Plaintiffs have indeed alleged competing business interests with Movants.    As detailed in the Petition, the Individual Defendants, when acting for certain Business Defendants, knowingly made false representations regarding the Business

Defendants' corporate affiliations, involvement in the marijuana industry, and ability to process transactions for cashless ATMs. [Doc. No. 1-1 ¶¶ 231-32]. They also engaged in fraudulent transactions that gave the appearance of legitimacy (when, in fact, they were not legitimate). *Id.* ¶¶ 44-45, 80, 111-12. These false representations and fraudulent transactions were made to give the appearance of propriety and thus advance the business interests of certain Defendants, at the direct cost to the business interests of Plaintiffs. Specifically, Movants' business interests were to induce Plaintiffs to open accounts for them and process their transactions. Conversely, Plaintiffs' business interests were to comply with federal banking regulations to avoid costly government investigations. When the Individual Defendants knowingly misrepresented information regarding the Business Defendants and thus subjected Plaintiffs to costly government investigations, Movants' and Plaintiffs' business interests came into competition with one another. As such, Plaintiffs have alleged the required elements to maintain a claim for violation of the ODTPA.

### C.    Even Were the Court to Find Plaintiffs Did Not Sufficiently Plead Their Seventh and Eighth Causes of Action, It Should Grant Plaintiffs Leave to Amend Their Complaint.

Given the opportunity to conduct fact discovery, Plaintiffs will seek to establish their claims for tortious interference and violation of the ODTPA. At this early stage of the litigation prior to discovery, Plaintiffs' claims should not be dismissed based on Defendants' technical legal arguments, which should be rejected as a matter law. However, if the Court is persuaded by any of them, Plaintiffs request they be granted leave to amend

their complaint to cure any deficiencies. Fed. R. Civ. P. 15(a)(2) ("The court should freely

give leave when justice so requires.").

**CONCLUSION**

For the foregoing reasons, Plaintiffs request this Court deny Defendants' Motion to

Dismiss for Lack of Personal Jurisdiction, Improper Service, and Failure to State a Claim.


August 7, 2024                              Respectfully submitted,


                                            */s/ Lawrence D. Rosenberg*
                                            Lawrence D. Rosenberg
                                            JONES DAY
                                            51 Louisiana Avenue, N.W.
                                            Washington, DC  20001.2113
                                            +1.202.879.3939
                                            ldrosenberg@jonesday.com
                                            *(admitted pro hac vice)*


                                            */s/ Donald K. Shandy*
                                            Donald K. Shandy, OBA #11511
                                            Evan G.E. Vincent, OBA #22325
                                            CROWE & DUNLEVY, P.C.
                                            Braniff Building
                                            324 North Robinson Avenue, Suite 100
                                            Oklahoma City, OK  73102.8273
                                            Telephone: +1.405.235.7700
                                            Facsimile: +1.405.239.6651
                                            donald.shandy@crowedunlevy.com
                                            evan.vincent@crowedunlevy.com

                                            *Counsel for Plaintiffs Shattuck*
                                            *Bancshares, Inc., and SNB Bank, N.A.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 7, 2024, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Seth A Day
Carson Glass Lamle
Jon Epstein
Littleton Tazewell Ellett , IV
**Hall Estill-OKC**
100 N Broadway Ave
Suite 2900
Oklahoma City, OK 73102
Phone: 405-553-2828
Fax: 405-553-2855


Neil D Kodsi
**Feldman Kodsi**
8325 NE 2nd Avenue
Suite 204
Miami, FL 33138
Phone: 305-445-2005
Fax: 305-445-2889

*/s/ Lawrence D. Rosenberg*
Lawrence D. Rosenberg

Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

Shattuck Bancshares, Inc., and SNB
Bank, N.A.,

      Plaintiffs,

v.

Eric Hannelius, Michael Shvartsman,
Oksana Moore, Karla Knight, Elena
Popova, Justin Soulen, Bill My Bnk,
LLC, BT Assets Group, Inc., EFT
Business Services, LLC, EnComPay,
Inc., Hannelius-Knight Family Trust,
MG Family Trust, OST, LLC, Pepper
Pay, LLC, Rocket Holdings, LLC, Salt
Money, Inc., Skylight Business Services,
LLC, Transact First, Inc., and
Transaction Processing Services, Inc.,

      Defendants.

Case No. CIV-24-677-J

## AFFIDAVIT OF NONSERVICE

    I, Leonard Gartman, state under penalty of perjury under the laws of the State of

Oklahoma that the following is true and correct:

1.    I am 18 years or older and not a party to this action or a member of a corporation

      or organization that is a party to this action.

2.    On June 3, 2024, I attempted to serve Defendants Eric Hannelius, Michael

      Shvartsman, Oksana Moore, Elena Popova, Justin Soulen, Bill My Bnk, LLC, BT

      Assets Group, Inc., EFT Business Services, LLC, EnComPay, Inc., Hannelius-

Knight Family Trust, MG Family Trust, Pepper Pay, LLC, Rocket Holdings, LLC, Salt Money, Inc., Skylight Business Services, LLC, Transact First, Inc., and Transaction Processing Services, Inc., (collectively, "Aventura Defendants") at 21550 Biscayne Boulevard, Suite 400, Aventura, Florida 33180 ("First Service Attempt").

3. During the First Service Attempt, an unknown female, who I believed to be from the legal department, stated no one present could accept service.

4. She stated that the general counsel works remotely and was not present and that Mr. Hannelius, Mr. Shvartsman, Ms. Moore, Ms. Popova, and Mr. Soulen were all not present.

5. She also stated Mr. Soulen no longer works at the office and may live in New York.

6. After trying to get more information, I was removed from the office by an unknown male and told I needed to leave.

7. The office was listed as being for Pepper Pay, LLC.

8. On June 4, 2024, Mr. Hannelius instructed service be made at 21550 Biscayne Boulevard, Suite 400, Aventura, Florida 33180.

9. On June 5, 2024, I attempted to serve the Aventura Defendants at 21550 Biscayne Boulevard, Suite 400, Aventura, Florida 33180 ("Second Service Attempt").

10. During the Second Service Attempt, an unknown female stated she had not seen Mr. Hannelius.

11. I then asked to speak to a manager. The unknown female left and did not return.

2

12. I proceeded to knock and ring the doorbell for approximately ten (10) minutes.

13. As an unknown male began to enter the office, I again asked for Mr. Hannelius, but was not able to understand his answer as he had a strong accent.

14. The unknown male did not acknowledge working at the office.

15. The unknown male then entered the office, and because the door shut behind him, I was not able to enter.

16. In summary, I was unable to serve the Aventura Defendants on the First Service Attempt or the Second Service Attempt.

August 2, 2024                    Respectfully submitted,

Leonard Gartman
CPS 2281

3

# Exhibit B

IN THE DISTRICT COURT OF ELLIS COUNTY, STATE OF OKLAHOMA

**SHATTUCK BANCSHARES, INC., and SNB BANK, N.A.**

   *Plaintiff(s) / Petitioner(s)*

v.                                                                                      Case No.: CJ-2024- 9

**ERIC HANNELIUS, et al.**

   *Defendant(s) / Respondent(s)*

<u>**AFFIDAVIT OF NONSERVICE**</u>

I, Shawn Borger, state:

I am 18 years or older and not a party to this action or a member of a corporation or organization that is a party to this action.

After careful inquiry and diligent attempts, I was unable to serve Eric Hannelius as I could not find the subject or information as to the location of the subject's whereabouts.

Serve Attempt #1
Date / Time: June 1, 2024 12:45 pm
Address: 72 BlackBerry Lane, Yarmouth, ME 04096
Photo: See Exhibit 1a below
Geolocation: https://google.com/maps?q=43.6742834934,-70.3221078404
Description of attempt: Process server arrived at provided address. No sign of life at residence. No answer at the door or from ring door bell. Process server talked with next door neighbor who confirmed that defendant does own property at the address provided. Also defendant does have an address associated in studio city California.

Serve Attempt #2
Date / Time: June 3, 2024 10:28 am
Address: 72 BlackBerry Lane, Yarmouth, ME 04096
Photo: See Exhibit 2a below
Geolocation: https://google.com/maps?q=43.7722277833,-70.1741991667
Description of attempt: Process server arrived at provided address, no answer at the door or from ring door bell. Property is observed to be a seasonal property. Process server did attempt to call servee/defendant, no answer from servee when call was initiated.

Serve Attempt #3
Date / Time: June 4, 2024 1:21 pm
Address: 72 BlackBerry Lane, Yarmouth, ME 04096
Photo: See Exhibits 3a, 3b below

Geolocation: https://google.com/maps?q=43.772212579,-70.1741647348

Description of attempt: Process server communicated via text with servee who indicated he will not be at provided address until August. Servee informed process server of an address in Miami Florida where servee will be located to have legal documents delivered.

Process server included photos, screenshots of conversation via text from servee that includes address and location of servee.

Total Cost: $196.70

I state under penalty of perjury under the laws of Oklahoma that the foregoing is true and correct.

Executed in

___Essex County_____,

___MA___  on  ___6/6/2024_____.

/s/ *Shawn Borger*
_____
Signature
Shawn Borger
+1 (207) 502-5216





Exhibit 2a)





Exhibit C

IN THE DISTRICT COURT OF ELLIS COUNTY, STATE OF OKLAHOMA

**SHATTUCK BANCSHARES, INC., and SNB BANK, N.A.**

    *Plaintiff(s) / Petitioner(s)*

v.

**ERIC HANNELIUS, MICHAEL SHVARTSMAN, OKSANA MOORE, KARLA KNIGHT, ELENA POPOVA, JUSTIN SOULEN, BILL MY BNK, LLC, BT ASSETS GROUP, INC., EFT BUSINESS SERVICES, LLC, ENCOMPAY, INC., HANNELIUS-KNIGHT FAMILY TRUST, MG FAMILY TRUST, ONE PAY CLOUD, LLC, OST, LLC, PEPPER PAY, LLC, ROCKET HOLDINGS, LLC, SALT MONEY, INC., SKYLIGHT BUSINESS SERVICES, LLC, TRANSACT FIRST, INC., and TRANSACTION PROCESSING SERVICES, INC**

Case No.: CJ-2024-9

    *Defendant(s) / Respondent(s)*

## <u>AFFIDAVIT OF SERVICE</u>

I, Roy Miller, state:

I am 18 years or older and not a party to this action or a member of a corporation or organization that is a party to this action.

I served the following documents to Michael Shvartsman in Miami-Dade County, FL on June 15, 2024 at 11:01 am at 18555 Collins Ave., Unit 2701, Sunny Isles Beach, FL 33160 by personal service by handing the following documents to an individual identified as Michael Shvartsman.

Summons
Petition
Exhibits

Additional Description:
Went into building and spoke to front desk.  They confirmed that this was Michael's unit and they said either he or his brother was upstairs. I went up to the unit, unit under renovations, and I asked for Michael Shvartsman.  Man in back of unit said "yes" and then he said to leave the documents on the Rumba so I did.

White Male, est. age 45-54, glasses: N, Black hair, 160 lbs to 180 lbs, 6' to 6' 3".
Geolocation of Serve: https://google.com/maps?q=25.948297423,-80.1200478291
Photograph: See Exhibit 1

Total Cost: $156.70

I state under penalty of perjury under the laws of Oklahoma that the foregoing is true and correct.

Executed in

_____Miami-Dade County_____,

___FL_____ on ____6/19/2024_____.

/s/ *Roy Miller*
_____
Signature
Roy Miller
+1 (786) 327-4973



Exhibit 1a)



# Exhibit D

IN THE DISTRICT COURT OF ELLIS COUNTY, STATE OF OKLAHOMA

**SHATTUCK BANCSHARES, INC.; SNB BANK, N.A.**

    *Plaintiff(s) / Petitioner(s)*

v.

**ERIC HANNELIUS, MICHAEL SHVARTSMAN, OKSANA MOORE, KARLA KNIGHT, ELENA POPOVA, JUSTIN SOULEN, BILL MY BNK, LLC, BT ASSETS GROUP, INC., EFT BUSINESS SERVICES, LLC, ENCOMPAY, INC., HANNELIUS-KNIGHT FAMILY TRUST, TRANSACTION PROCESSING SERVICES, INC., MG FAMILY TRUST, ONE PAY CLOUD, LLC, OST, LLC, PEPPER PAY, LLC, ROCKET HOLDINGS, LLC, SALT MONEY, INC., SKYLIGHT BUSINESS SERVICES, LLC, TRANSACT FIRST, INC.**

Case No.: CJ-2024-9

    *Defendant(s) / Respondent(s)*

## <u>AFFIDAVIT OF SERVICE</u>

I, Roy Miller, state:

I am 18 years or older and not a party to this action or a member of a corporation or organization that is a party to this action.

I served the following documents to MG Family Trust in Miami-Dade County, FL on June 15, 2024 at 11:04 am at 18555 Collins Ave., Unit 2701, Sunny Isles Beach, FL 33160 by leaving the following documents with Michael Schwartzman who as Registered Agent is authorized by appointment or by law to receive service of process for MG Family Trust.

Petition
Summons
Exhibits

Additional Description:
Went into building and spoke to front desk. They confirmed that this was Michael's unit and they said either he or his brother was upstairs. I went up to the unit, unit under renovations, and I asked for Michael Shvartsman. Man in back of unit said "yes" and then he said to leave the documents on the Rumba so I did.

White Male, est. age 45-54, glasses: N, Black hair, 180 lbs to 200 lbs, 6' to 6' 3".
Geolocation of Serve: https://google.com/maps?q=25.9481936938,-80.120057523
Photograph: See Exhibit 1

Total Cost: $81.70

I state under penalty of perjury under the laws of Oklahoma that the foregoing is true and correct.

Executed in

_____Miami-Dade County_____,

___FL____ on ___6/19/2024_____.

/s/ *Roy Miller*
_____
Signature
Roy Miller
+1 (786) 327-4973





Exhibit E

IN THE DISTRICT COURT OF ELLIS COUNTY, STATE OF OKLAHOMA

**SNB BANK, N.A.; SHATTUCK BANCSHARES, INC.**

    *Plaintiff(s) / Petitioner(s)*

v.

**TRANSACT FIRST, INC., TRANSACTION PROCESSING
SERVICES, INC., ERIC HANNELIUS, MICHAEL
SHVARTSMAN, OKSANA MOORE, KARLA KNIGHT,
ELENA POPOVA, JUSTIN SOULEN, BILL MY BNK, LLC,
BT ASSETS GROUP, INC., EFT BUSINESS SERVICES,
LLC, ENCOMPAY, INC., HANNELIUS-KNIGHT FAMILY
TRUST, MG FAMILY TRUST, ONE PAY CLOUD, LLC,
OST, LLC, PEPPER PAY, LLC, ROCKET HOLDINGS, LLC,
SALT MONEY, INC., SKYLIGHT BUSINESS SERVICES,
LLC**

Case No.: CJ-2024-9

    *Defendant(s) / Respondent(s)*

## <u>AFFIDAVIT OF SERVICE</u>

I, Roy Miller, state:

I am 18 years or older and not a party to this action or a member of a corporation or organization that is a party to this action.

I served the following documents to Oksana Moore in Miami-Dade County, FL on June 15, 2024 at 11:14 am at 250 174th St, Apt 2004, Sunny Isles Beach, FL 33160 by refusal service by identifying the following documents, offering to deliver them to a person identified to me as Oksana Moore who refused service, and then leaving the documents in a conspicuous place.

Petition
Summons
Exhibits

Additional Description:
Confirmed with neighbor that she lives there. Unit has 2 doors. The woman opened the door a bit. I told her I had a delivery, court documents, and she shut the door.  I  announced that I was leaving them at the front door and that she had been served.

White Female, est. age 45-54, glasses: N, Blonde hair, 140 lbs to 160 lbs, 5' 6" to 5' 9".
Geolocation of Serve: https://google.com/maps?q=25.9369614666,-80.1276381562
Photograph: See Exhibit 1

Total Cost: $156.70

I state under penalty of perjury under the laws of Oklahoma that the foregoing is true and correct.

Executed in

___Miami-Dade County_____,

___FL_____ on ___6/19/2024_____.

/s/ *Roy Miller*
_____
Signature
Roy Miller
+1 (786) 327-4973





# Exhibit F

IN THE DISTRICT COURT OF ELLIS COUNTY, STATE OF OKLAHOMA

**SHATTUCK BANCSHARES, INC., and SNB BANK, N.A.**

    *Plaintiff(s) / Petitioner(s)*

v.

**ERIC HANNELIUS, MICHAEL SHVARTSMAN, OKSANA
MOORE, KARLA KNIGHT, ELENA POPOVA, JUSTIN
SOULEN, BILL MY BNK, LLC, BT ASSETS GROUP, INC.,
EFT BUSINESS SERVICES, LLC, ENCOMPAY, INC.,**        Case No.: CJ-2024-9
**HANNELIUS-KNIGHT FAMILY TRUST, MG FAMILY
TRUST, ONE PAY CLOUD, LLC, OST, LLC, PEPPER PAY,
LLC, ROCKET HOLDINGS, LLC, SALT MONEY, INC.,
SKYLIGHT BUSINESS SERVICES, LLC, TRANSACT
FIRST, INC., and TRANSACTION PROCESSING
SERVICES, INC**

    *Defendant(s) / Respondent(s)*

## <u>AFFIDAVIT OF SERVICE</u>

I, Roy Miller, state:

I am 18 years or older and not a party to this action or a member of a corporation or organization that is a party to this action.

I served the following documents to Justin Soulen in Miami-Dade County, FL on June 15, 2024 at 10:39 am at 3936 NE 168th St., North Miami Beach, FL 33160 by residential substituted service by leaving the documents at the usual place of abode of Justin Soulen with Michael Soulen who is the Father of Justin Soulen and whose age is 15 years or older.

Petition
Summons
Exhibits

Additional Description:
Served Michael Soulen, father to Justin Soulen. Justin Soulen does reside at this address.

White Male, est. age 55-64, glasses: Y, Gray hair, 180 lbs to 200 lbs, 6' to 6' 3".
Geolocation of Serve: https://google.com/maps?q=25.934743736,-80.1322979846

Photograph: See Exhibit 1

Total Cost: $156.70

I state under penalty of perjury under the laws of Oklahoma that the foregoing is true and correct.

Executed in

   Miami-Dade County      ,

   FL   on   7/12/2024   .

/s/ *Roy Miller*
_____

Signature
Roy Miller
+1 (786) 327-4973



Exhibit G

DISTRICT COURT OF ELLIS COUNTY, STATE OF OKLAHOMA

**Shattuck Bancshares, Inc.; SNB Bank, N.A.**

    *Plaintiff(s) / Petitioner(s)*

v.
                                      Case No.: CJ-2024-9

**ERIC HANNELIUS; et al.**

    *Defendant(s) / Respondent(s)*

## <u>AFFIDAVIT OF SERVICE</u>

I, Roy Miller, state:

I am 18 years or older and not a party to this action or a member of a corporation or organization that is a party to this action.

I served the following documents to Oksana Moore in Miami-Dade County, FL on July 20, 2024 at 9:19 am at 250 174th Street, Sunny Isles Beach, FL 33160 by refusal service by identifying the following documents, offering to deliver them to a person identified to me as Oksana Moore who refused service, and then leaving the documents in a conspicuous place.

Summons
Petition
Exhibits

Additional Description:
Knocked on door and woman answered. I asked for Oksana Moore and she closed the door on me.  So I stated I was serving her by refusal and left the papers against her door. She was viewing via the eyehole the entire time, I could see the light being blocked out. I verified with neighbor in unit 2005 that servee lives in the unit and once again the resident refused to accept service (see open door photo). She owns 4 units in this building. I waited for almost 50 minutes at the complex talking to neighbors and security after I discovered she own multiple units in the condos in the area.

White Female, est. age 35-44, glasses: N, Blonde hair, 140 lbs to 160 lbs, 5' 3" to 5' 6".
Geolocation of Serve: https://google.com/maps?q=25.9365219082,-80.1271801225
Photograph: See Exhibit 1

Total Cost: $1.00

I state under penalty of perjury under the laws of Oklahoma that the foregoing is true and correct.

Executed in

_Miami-Dade County_,

_FL_ on _7/22/2024_.

/s/ *Roy Miller*
_____
Signature
Roy Miller
+1 (786) 327-4973



Exhibit H

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

Shattuck Bancshares, Inc., and SNB
Bank, N.A.,

      Plaintiffs,

v.

Eric Hannelius, Michael Shvartsman,
Oksana Moore, Karla Knight, Elena
Popova, Justin Soulen, Bill My Bnk,
LLC, BT Assets Group, Inc., EFT
Business Services, LLC, EnComPay,
Inc., Hannelius-Knight Family Trust,
MG Family Trust, OST, LLC, Pepper
Pay, LLC, Rocket Holdings, LLC, Salt
Money, Inc., Skylight Business Services,
LLC, Transact First, Inc., and
Transaction Processing Services, Inc.,

      Defendants.

Case No. CIV-24-677-J

## <u>DECLARATION</u>

I, L. Clay Stuart, state under penalty of perjury under the laws of the State of Oklahoma that the following is true and correct:

1.    Individuals with knowledge of the underlying facts in this case who may serve as witnesses at trial, who currently work or previously worked at SNB Bank, N.A., and who reside in Oklahoma include:

    a.  Myself, L. Clay Stuart, President and Chief Executive Officer;

    b.  Debby Terzo, Vice President and Chief Operating Officer;

    c.   Sherri Nieman, Vice President, Compliance Officer, Bank Secrecy Act Officer, and Security Officer;

    d.   Lesta Stevens, Assistant Vice President and Cashier;

    e.   Joe Thomas, Assistant Vice President;

    f.   Rachel Jones, former Bookkeeper and Customer Service Representative; and

    g.   Marisol Fuentes, Bookkeeper and Customer Service Representative.

2.   Plaintiffs have at least 20,000 documents that are relevant to this case stored either physically or electronically in Oklahoma.

3.   To the best of my recollection, Plaintiffs communicated with Defendants Michael Shvartsman, Oksana Moore, and Justin Soulen at the following frequencies:

    a.   Plaintiffs communicated with Ms. Moore on a daily basis. Ms. Moore initiated approximately half of these communications.

    b.   Plaintiffs at times communicated with Mr. Shvartsman on a daily basis. At other times, however, Plaintiffs communicated with Mr. Shvartsman more or less frequently. Mr. Shvartsman initiated many of these communications with Plaintiffs in Oklahoma.

    c.   Plaintiffs at times communicated with Mr. Soulen on a monthly basis. At other times, however, Plaintiffs communicated with Mr. Soulen more or less frequently. Mr. Soulen initiated communications with Plaintiffs in Oklahoma.

August 7, 2024

Respectfully submitted,

L. Clay Stuart