IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SHATTUCK BANCSHARES, INC., and SNB BANK, N.A.<br><br>**Plaintiffs,**<br>v.<br><br>ERIC HANNELIUS, MICHAEL SHVARTSMAN, OKSANA MOORE, KARLA KNIGHT, ELENA POPOVA, JUSTIN SOULEN, BILL MY BNK, LLC, BT ASSETS GROUP, INC., EFT BUSINESS SERVICES, LLC, ENCOMPAY, INC., HANNELIUS-KNIGHT FAMILY TRUST, MG FAMILY TRUST, ONE PAY CLOUD, LLC, OST, LLC, PEPPER PAY, LLC, ROCKET HOLDINGS, LLC, SALT MONEY, INC., SKYLIGHT BUSINESS SERVICES, LLC, TRANSACT FIRST, INC., AND TRANSACTION PROCESSING SERVICES, INC.,<br><br>**Defendants.** | Case No. CIV-24-677-J |

**REPLY IN SUPPORT OF MOTION TO TRANSFER VENUE PER 28 U.S.C. § 1404(a) OR, ALTERNATIVELY, DISMISS THE COMPLAINT IN PART FOR <u>FAILURE TO STATE A CLAIM PER RULE 12(b)(6)</u>**

Movants hereby submit their reply in support of their motion to transfer venue or dismiss in the alternative [Doc. No. 19].

**I.    THIS ACTION SHOULD BE TRANSFERRED TO THE UNITED STATES DISTICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA PURSUANT TO 28 U.S.C. § 1404(a).**

"For the convenience of parties and witnesses, in the interests of justice," this Court may transfer this case to the Southern District of Florida. 28 U.S.C. § 1404(a).

The overwhelming majority of the defendants and non-party witnesses herein are either citizens of and/or maintain their principal places of businesses in Florida.

> **A.     While the Pepper Pay Agreement provides venue is proper in Oklahoma, it does not prevent transfer of an action to a more convenient forum in Florida.**

Plaintiffs first argue that one Defendant (Pepper Pay) "<u>must</u>" remain in this venue because of a contract it signed. Doc. No. 45, ECF p. 6. The contractual provision relied upon by Plaintiffs merely represents that Pepper Pay agreed that venue would be proper in this Court, not that Oklahoma is the *only* forum in which the suit must be brought. *JDT Cap., LLC v. Fowler*, No. CIV-20-781-SLP, 2020 WL 12811481, at *2 (W.D. Okla. Sept. 17, 2020) ("Permissive forum selection clauses, often described as 'consent to jurisdiction' clauses, authorize jurisdiction and venue in a designated forum, but do not prohibit litigation elsewhere.") (quoting 14D Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3803.1 (4th ed., Apr. 2020 update)); *Behar v. Underwriters at Lloyds*, No. CIV.07 179 C, 2007 WL 1170605, at *3 (W.D. Okla. Apr. 18, 2007) ("Although the insured consents to the jurisdiction of Utah courts, no obligatory or mandatory language is used to indicate an intent to make venue exclusive.") Thus, while Pepper Pay does not dispute that venue would be proper here, that does not mean that Pepper Pay or the other Movants may not contend that the Florida venue would be more convenient for the parties and nonparties involved.

**B.     Plaintiffs' transfer analysis fails to account for the convenience of the non-party witnesses—the "most important" factor the analysis.**

Plaintiffs argue next that the motion to transfer should be denied because it is simply a "desire to shift the inconvenience of litigating this case from Movants to Plaintiffs." Doc. No. 45, ECF p. 4. In other words, Plaintiffs contend the convenience of both sides to litigate near their homes cancels each other out; therefore, the balance does not "strongly favor" the Movants. However, Plaintiffs' analysis fails to explain why the convenience of the non-party witnesses, who are clearly necessary based on Plaintiffs' allegations, do not warrant transfer to the Southern District of Florida. The convenience of witnesses is the most important factor in deciding a motion under § 1404(a). *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1169 (10th Cir. 2010). Indeed, Plaintiffs fail to address or otherwise distinguish the cases cited in Movants' motion (some of which were issued by this Court) granting transfers of venue based on the convenience of non-party witnesses. *E.g.*, *Nw. Animal Hosp. v. Earnhardt*, 452 F. Supp. 191, 194 (W.D. Okla. 1977) (transfer was proper when majority of defendants' witnesses did not reside in Oklahoma); *Nat'l Sur. Corp. v. Robert M. Barton Corp.*, 484 F. Supp. 222, 225 (W.D. Okla. 1977); *Anderson v. Family Dollar, Inc.*, No. CIV-04-0210-F, 2004 U.S. Dist. LEXIS 30579 (W.D. Okla. April 30, 2004). Nor do they cite any authority or case law in support of (what appears to be) an argument that this case should not be transferred to Florida as a punishment to Movants because they were difficult to serve in Florida.

Furthermore, while Plaintiffs recognize that Movants' general counsel and employees/agents will be non-party witnesses, they fail to explain why the fact that these non-parties reside in Florida has no impact on the analysis. Nor do they address how they intend to compel these necessary witnesses to participate in the litigation in light of Rule 45(c)'s jurisdictional limitations. Plaintiffs also argue that Movants presented no statements from the out-of-state, government witnesses to show they would be unwilling to travel to Oklahoma. However, no additional evidence is needed to show that it would be more convenient for those witnesses (and for their government agency employers) to testify in Florida where they live and work (and where Plaintiffs' and Defendants' outside litigation counsel maintain law offices), rather than 1,500 miles away.[1] It is clearly in the best interest of governmental resources that the witnesses employed by the USAO and HSI not be forced to participate in private litigation in Oklahoma when it is far more convenient for them to participate in Florida.

The key sources of proof are more accessible in the Southern District of Florida. *Blender v. Sibley*, 396 F. Supp. 300, 303–04 (E.D. Pa. 1975). *Anderson v. Family Dollar, Inc.*, No. CIV-04-0210-F, 2004 U.S. Dist. LEXIS 30579 (W.D. Okla. April 30, 2004) (although the plaintiff and some of the witnesses resided in Oklahoma, transfer was proper given a majority of the other witnesses were located in or closer to North Carolina and it would be less costly for the majority of witnesses if trial were conducted in North

---

[1] Plaintiffs fail to respond to the argument that litigation counsel for Plaintiffs and Defendants have offices in Miami, Florida. *See Bright v. Ohio Nat'l Life Assurance Corp.*, No. CIV-11-134-D, 2011 WL 13130913, at *1 (W.D. Okla. Aug. 1, 2011) (finding transfer to the Northern District was proper because it would afford more convenient access to witnesses and evidence and noting the parties' counsel had offices in Tulsa).

Carolina); *Nat. Sur. Corp.*, 484 F. Supp. at 226 (finding transfer was proper where the convenience of the overwhelming number of material witnesses, would best be served by transfer of this action).

Even if it were equally convenient for the parties to litigate in their own venues, the fact that numerous non-party witnesses (including employees for two federal agencies) live in south Florida and counsel for both parties have offices there strongly favors transfer. Therefore, for the sake of convenience of all parties and non-party witnesses involved, the case should be transferred to the Southern District of Florida.

## II. ALTERNATIVELY, PLAINTIFFS' THIRD, SEVENTH, AND EIGHTH CAUSES OF ACTION SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

### A. The claim for breach of the Pepper Pay Agreement should be Dismissed.

Section 12.16(a) of the Pepper Pay Agreement provides:

> (a) Duty to Notify. In the event of any dispute, controversy, or claim arising out of or relating to this Agreement or the construction, interpretation, performance, breach, termination, enforceability or validity thereof (hereinafter, a "Dispute"), the Party raising such Dispute shall notify the other Party promptly and no later than sixty (60) days from the date of its discovery of the Dispute. In the case of a Dispute relating to account or transaction statements or similar matter, the failure of a Party to notify the other Party of such Dispute within sixty (60) days from the date of its receipt shall result in such matter being deemed undisputed and accepted by the Party attempting to raise such Dispute.

Doc. No. 1-1, ECF p. 73.

Plaintiffs argue the waiver provision applies only to Disputes "relating to account or transaction statements or similar matter[s]," not "*all* disputes." Doc. No. 45, ECF p. 12 (emphasis in original). However, even if the claim did not relate to an account

5

statement or other similar matter, the first part of the section requires that Plaintiff "shall notify" Pepper Pay within sixty (60) days of *any* claim relating to the contract or performance.

Plaintiffs maintain such notice was not required "because this dispute concerns Pepper Pay's operation of cashless ATMs . . . not the accuracy of account or transaction statements." *Id*. Therefore, according to Plaintiffs, "Section12.16(a) is irrelevant" since it is limited to "disputes over mistakes in a statement." *Id.*

The subject section expressly provides to "any dispute" relating to the agreement. The first part requires that the party raising any dispute must notify the other party within sixty (60) days of discovery of the dispute. The second part refers to a dispute relating to account or transaction statements "or similar matter" and states that if such notice is not given for that type of dispute, such matter is deemed undisputed and accepted. Plaintiffs limit their analysis solely to disputes concerning "account or transaction statements," and do not attempt to explain why or how the dispute underlying this claim, i.e. the operation of cashless ATMs, does not constitute "any dispute" as set forth in the first part of § 12.16(a) nor do they attempt to explain why or how it does not constitute a "similar matter" under the Agreement.

Plaintiffs fail to allege they provided Pepper Pay the required notice regarding any alleged breach pursuant to sections 12.16(a) and 12.11 of the Pepper Pay Agreement. Nor do they contend otherwise in their response.

Plaintiffs allege Pepper Pay breached the Pepper Pay Agreement "by operating cashless ATMs which were expressly excluded from permitted ATM types." Complaint

6

at ¶ 168. Plaintiffs then allege that "[o]n the morning of November 2, 2023," they discovered "for the first time that 50% of the ATMs involved in [Pepper Pay's] business were cashless ATMs." *Id.* at ¶ 132. Therefore, pursuant to section 12.16(a) of the Agreement, a "dispute" arose on November 2, 2023, and Plaintiffs had sixty (60) days to notify Pepper Pay of such dispute in compliance with Section 12.11, so the parties could proceed with resolution under section 12.16(b) (informal negotiation to resolve dispute) and, if necessary, mandatory arbitration under 12.16(c).

Plaintiffs argue they were unaware of the scope of the breach at the time they were informed that "50% of the ATMs involved in his businesses were cashless." Doc No. 45, ECF p. 13. However, they present no authority to support any contention that they needed to know more about the scope when they pled that they knew that 50% of the ATMs were cashless on November 2, 2023.

### B. Plaintiffs' claim for tortious interference fails because there are no allegations of an impaired economic relationship.

There are two types of interference torts – (1) interference with a prospective economic advantage and (2) interference with a contractual relationship. *Overbeck v. Quaker Life Ins. Co.*, 757 P.2d 846 (Okla. 1984). Plaintiffs have effectively pled neither. *See* Complaint, ¶ 225 (alleging "the Individual Defendants . . . interfered with SNB's relationships with federal banking regulators"). Plaintiffs argue they "need only allege potential loss of property right related to its business relationship with federal regulators." Doc. No. 45, p. 13. To this end, they argue Defendants' actions "cast suspicion on and disadvantaged SNB with these regulators and agencies, which allow SNB to operate in

exchange for compliance with federal law." *Id.* at 14. Plaintiffs further contend (without citing to any Oklahoma authority) that "the right to operate a lawful business is a property right." *Id.* (citing Washington state case law). Even taking Plaintiffs' allegations as true, they still do not constitute a claim under either type of interference tort.

As for the first tort, the Complaint "contains no allegations showing [Plaintiffs] had a 'reasonable assurance' of obtaining prospective business relations" with anyone. *Hetronic Int'l, Inc. v. Rempe*, 99 F. Supp. 3d 1341, 1350 (W.D. Okla. 2015). Plaintiffs do not identify any "prospective customer relationships were interfered with or how the actions of [Movants] caused the interference." *Id.* While Plaintiffs argue that Defendants actions somehow caused federal regulators to be more suspicious of them, regulators are not prospective customers. Because Plaintiffs did not plead any prospective or actual customer relationships that were terminated as a result of Movants' conduct, Plaintiffs failed to state a tortious interference claim.

As for the second tort, the interference claim is "properly pled only if it alleges that a third party induced one of the parties to the contract to breach its agreement." *Freeman v. Sikorsky Aircraft Corp.*, No. 04CV0506CVESAJ, 2006 WL 2385311, at *4 (N.D. Okla. Aug. 17, 2006); *see also Wilspec Technologies, Inc. v. DunAn Holding Group, Co., Ltd.*, 204 P.3d 69, 74 (Okla. 2009) (a plaintiff must prove "the inducer either prevents or hinders the performance of a valid contract to which it is not a party."). Because there is no business or contractual right between Plaintiffs and federal banking regulators, there is no tortious interference claim. *Freeman*, 2006 WL 2385311, at *4. Nor do Plaintiffs cite any authority supporting their argument that a "business

relationship" exists between government agencies and the banks they are required to regulate under federal law. If that were true, then anyone who causes a law enforcement officer to be suspicious of and/or commence an investigation into a presumably innocent third party could be held liable for tortious interference on the basis they interfered with the third party's "business relationship" with the officer. Plaintiffs' argument is not only unsupported by any authority but also yields an absurd result. Because Plaintiffs cannot plead facts to recover under either type of interference tort, their seventh claim should be dismissed under Rule 12(b)(6).

### C. Plaintiffs' claim for violation of the Oklahoma Deceptive Trade Practices Act fails because Plaintiff and Defendants are not competitors.

Plaintiffs argue their ODTPA claim is "categorically different" from Movants' cited case law because they are not purchasers or consumers. However, this distinction is irrelevant and does not cure Plaintiffs' failure to allege or otherwise identify a "competing business interest" between themselves and Defendants. *See Original Rex, L.L.C. v. Beautiful Brands Int'l*, LLC, 792 F. Supp. 2d 1242, 1261–62 (N.D. Okla. 2011). "It has been definitively established that [the Deceptive Trade Practices Act] **protect[s] competing business interests** and do[es] not present a basis for suit by consumers." *Conatzer v. American Mercury Insurance Company, Inc.*, 15 P.3d 1252, 1254 (Okla. Civ. App. 2000) (emphasis supplied). Thus, in *Thomas v. Metropolitan Life Ins. Co.*, 540 F. Supp. 2d 1212 (W. D. Okla. 2008) the court dismissed the plaintiffs' claim for violation of the ODTPA because "there are no allegations that plaintiffs are businesses in competition with [defendant] as required by the ODTPA." *Id*. at 1228.

9

While Plaintiffs argue that Defendants made false representations in order to use accounts at Plaintiffs' bank, they fail to show they are in competition with or have competing business interests against any of the Movants—some of which Plaintiffs allege are marijuana-related entities. A competing business interest refers to persons and/or entities actively competing in the marketplace (which Plaintiffs are unable to allege). *See Original Rex.* at 1262 ("Because [corporate] plaintiff has never had any actively competing franchises or stores, [corporate] defendants are entitled to summary judgment on plaintiff's ODTPA Claim."). Accordingly, Plaintiffs' eighth claim should be dismissed without leave to amend. *Thomas,* 540 F.Supp.2d at 1228.

Date:  August 14, 2024                                     Respectfully submitted,

*/s Seth A. Day*
Jon Epstein, OBA No. 13274
Seth A. Day, OBA No. 20670
Carson Glass Lamle, OBA No. 32876
Littleton T. Ellett, IV, OBA No. 34644
**HALL, ESTILL, HARDWICK, GABLE, GOLDEN & NELSON, P.C.**
100 North Broadway, Suite 2900
Oklahoma City, OK  73102
Telephone:  (405) 553-2828
Facsimile:  (405) 553-2855
jepstein@hallestill.com
sday@hallestill.com
clamle@hallestill.com
tellett@hallestill.com

-and-

Neil David Kodsi
**FELDMAN KODSI**
8325 NE 2nd Avenue, Suite 204
Miami, FL 33138
Telephone: (605) 445-2005
nkodsi@feldmankodsi.com
*(admitted pro hac vice)*

**ATTORNEYS FOR MOVANTS**

## **CERTIFICATE OF SERVICE**

      I hereby certify that on August 14, 2024, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

      Ryan E. Price
      Lawrence D. Rosenberg
      Donald Shandy
      Evan Vincent
      *Attorneys for Plaintiffs*

      /s Seth A. Day
      Seth A. Day

20476337.1:014461.00001