IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SHATTUCK BANCSHARES, INC., AND SNB BANK, N.A.<br><br>**Plaintiffs,**<br>v.<br><br>ERIC HANNELIUS, MICHAEL SHVARTSMAN, OKSANA MOORE, KARLA KNIGHT, ELENA POPOVA, JUSTIN SOULEN, BILL MY BNK, LLC, BT ASSETS GROUP, INC., EFT BUSINESS SERVICES, LLC, ENCOMPAY, INC., HANNELIUS-KNIGHT FAMILY TRUST, MG FAMILY TRUST, ONE PAY CLOUD, LLC, OST, LLC, PEPPER PAY, LLC, ROCKET HOLDINGS, LLC, SALT MONEY, INC., SKYLIGHT BUSINESS SERVICES, LLC, TRANSACT FIRST, INC., AND TRANSACTION PROCESSING SERVICES, INC.,<br><br>**Defendants.** | Case No. 5:24-cv-00677-J |

**REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, IMPROPER SERVICE, AND FAILURE TO STATE A CLAIM AND SUPPORTING BRIEF**

Movants Michael Shvartsman, Oksana Moore, Justin Soulen, and MG Family Trust, hereby submit their reply in support of their motion to dismiss for lack of personal jurisdiction, improper service, and failure to state a claim [Doc. No. 27].

I. **THE COURT LACKS PERSONAL JURISDCITION OVER SOULEN, MOORE, AND SHVARTSMAN.**

Plaintiffs have failed to satisfy their "burden of establishing personal jurisdiction" over Shvartsman, Moore, and Soulen. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149

1

F.3d 1086, 1091 (10th Cir. 1998) (citation omitted).  Plaintiffs proffer the Declaration of L. Clay Stuart (Doc. No. 46, ECF pp. 66-68) to support their contention that "Individual Movants have more than enough contacts with Oklahoma to satisfy the personal jurisdiction analysis." *Id.*, ECF p. 4.  However, Mr. Stuart's averments do not support jurisdiction over Shvartsman, Soulen, and Moore.  Specifically, Mr. Stuart states:

> Plaintiffs communicated with Defendants Michael Schvartsman, Oksana Moore, and Justin Soulen at the following frequencies:
> a. Plaintiffs communicated with Ms. Moore on a daily basis. Ms. Moore initiated approximately half of these communications.
> b. Plaintiffs at times communicated with Mr. Shvartsman on a daily basis. At other times, however, Plaintiffs communicated with Mr. Shvartsman more or less frequently. Mr. Shvartsman initiated many of these communications with Plaintiffs in Oklahoma.
> c. Plaintiffs at times communicated with Mr. Soulen on a monthly basis. At other times, however, Plaintiffs communicated with Mr. Soulen more or less frequently. Mr. Soulen initiated communications with Plaintiffs in Oklahoma.

Stuart Decl., ¶ 3, *id.* at ECF p. 67.

Beyond these generalized statements about sporadic communications—the subject matter and nature of which are not specified—Mr. Stuart says nothing more regarding the individual Movants.  Yet "the exercise of jurisdiction depends on the *nature* of those contacts." *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1418 (10th Cir. 1988) (emphasis in original). Unspecified "communications with Plaintiffs in Oklahoma" do not satisfy the due process requirements of the minimum contacts test*.  See SportChassis, LLC v. Broward Motorsports of Palm Beach, LLC*, 2011 WL 672574, at *3 (W.D. Okla. Feb. 15, 2011) (finding insufficient basis for exercise of personal jurisdiction over individual defendants—who were also "managing members" of the corporate defendant—where

plaintiff asserted only "conclusory allegations that they directed communications" to Oklahoma leaving "no indication that any communication [individual defendants] did have with [plaintiff] were made for anything other than the benefit of [the corporate defendant]"); *Nicholas v. Buchanan,* 806 F.2d 305, 307 (1st Cir.1986) (plaintiff's "generalized reference to inter-state contacts 'via telephone communications' and 'via U.S. mail,' without more," did not satisfy due process requirements), *cert. denied,* 481 U.S. 1071 (1987); *Peterson v. Kennedy,* 771 F.2d 1244, 1262 (9th Cir.1985) ("ordinarily 'use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the [forum] state'") (citation omitted), *cert. denied,* 475 U.S. 1122 (1986); *Scullin Steel Co. v. Nat'l Ry. Utilization Corp.,* 676 F.2d 309, 314 (8th Cir.1982) ("use of interstate facilities (telephone, the mail), . . . are secondary or ancillary factors and cannot alone provide the 'minimum contacts' required by due process"); *Stuart v. Spademan,* 772 F.2d 1185, 1193 (5th Cir.1985) ("[A]n exchange of communications between a resident and a nonresident in developing a contract is insufficient of itself to be characterized as purposeful activity invoking the benefits and protection of the forum state's laws.").

  Because Plaintiffs cannot point to any contacts outside those made by the corporate defendants, e.g. opening up accounts at SNB and signing contracts, they cannot satisfy their burden of establishing personal jurisdiction over Shvartsman and Moore. As for Soulen, Plaintiffs do not even allege that he opened any accounts or signed contracts for any corporate Defendant. Plaintiffs pled (¶ 67 of Complaint) that Soulen, as Pepper Pay's counsel, sent an email which Plaintiff attached as Exhibit R to the Complaint. That email

3

stated "I just relayed our conversation to the signors confirming that 'no' should be selected on the Account Practice Questionnaire as we are not plant-touching in any capacity." An email from counsel (responding to a call initiated by Plaintiffs) relaying information from the bank to the clients does not subject Soulen to jurisdiction in Oklahoma. *Newsome v. Gallacher*, 722 F.3d 1257, 1281 (10th Cir. 2013). Accordingly, the Complaint should be dismissed as to these individuals for lack of personal jurisdiction.

## II. MG FAMILY WAS IMPROPERLY NAMED AS A DEFENDANT.

Plaintiffs do not cite a *single* case in support of their argument that the MG Family Trust is a proper party to this lawsuit. Nor do they address *any* of the cases cited by Movants. Instead, they rely upon a statute applicable to "common law trust[s] or . . . other unincorporated association[s]." Okla. Stat. tit. 12, § 182. However, the MG Family Trust is an *express* trust organized under Florida law with formal documentation identifying a trustee, beneficiaries, and trust res and, thus, falls outside the scope of that statute. *Childers v. Breese*, 213 P.2d 565, 567 (Okla. 1949) ("Express trusts are generally created by instruments that point out directly and expressly the property, persons, and purpose of the trust; hence, they are called direct or express trusts in contradistinction from those trusts that are *implied, presumed, or construed by law* to arise out of the transactions of the parties.") (quotations omitted, emphasis added). In addition, section 182 applies only to associations that "transact business for gain or speculation"; however, Plaintiffs fail to allege that the MG Family Trust does so. For both of these reasons, section 182 does not apply.

## III.     PLAINTIFFS FAILED TO PROPERLY SERVE PROCESS ON MOVANTS.

Plaintiffs' Complaint should be dismissed for all of the reasons set forth herein. Moreover, Movants were not properly served and explained significant misstatements and errors in the process server's affidavits[1] that necessitated Movants disputing service of process, as is their right under the Federal Rules of Civil Procedure.

## IV.     PLAINTIFFS' SEVENTH AND EIGHTH CAUSES OF ACTION FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

### A.     Plaintiffs' claim for tortious interference fails because there are no allegations of an impaired economic relationship.

There are two types of interference torts – (1) interference with a prospective economic advantage and (2) interference with a contractual relationship. *Overbeck v. Quaker Life Ins. Co.*, 757 P.2d 846 (Okla. 1984). Plaintiffs have effectively pled neither. *See* Complaint, ¶ 225 (alleging "the Individual Defendants . . . interfered with SNB's relationships with federal banking regulators"). Plaintiffs argue they "need only allege potential loss of property right related to its business relationship with federal regulators." Doc. No. 46, p. 20. To this end, they argue Defendants' actions "cast suspicion on and disadvantaged SNB with these regulators and agencies, which allow SNB to operate in exchange for compliance with federal law." *Id.* at 20. Plaintiffs further contend (without citing to any Oklahoma authority) that "the right to operate a lawful business is a property right." *Id.* (citing Washington state case law). Even taking Plaintiffs' allegations as true, they still do not constitute a claim under either type of interference tort.

---

[1] Doc No. 27-1, ECF pp. 5-8 (Moore); Doc No. 27-2, ECF pp. 4-6 (Soulen); Doc No. 27-3, ECF pp. 5-13 (Shvartsman and MG Family Trust).

As for the first tort, the Complaint "contains no allegations showing [Plaintiffs] had a 'reasonable assurance' of obtaining prospective business relations" with anyone. *Hetronic Int'l, Inc. v. Rempe*, 99 F. Supp. 3d 1341, 1350 (W.D. Okla. 2015). Plaintiffs do not identify any "prospective customer relationships were interfered with or how the actions of [Movants] caused the interference." *Id.* While Plaintiffs argue that Defendants actions somehow caused federal regulators to be more suspicious of them, regulators are not prospective customers. Because Plaintiffs did not plead any prospective or actual customer relationships that were terminated as a result of Movants' conduct, Plaintiffs failed to state a tortious interference claim.

As for the second tort, the interference claim is "properly pled only if it alleges that a third party induced one of the parties to the contract to breach its agreement." *Freeman v. Sikorsky Aircraft Corp.*, No. 04CV0506CVESAJ, 2006 WL 2385311, at *4 (N.D. Okla. Aug. 17, 2006); *see also Wilspec Technologies, Inc. v. DunAn Holding Group, Co., Ltd.*, 204 P.3d 69, 74 (Okla. 2009) (a plaintiff must prove "the inducer either prevents or hinders the performance of a valid contract to which it is not a party."). Because there is no business or contractual right between Plaintiffs and federal banking regulators, there is no tortious interference claim. *Freeman*, 2006 WL 2385311, at *4. Nor do Plaintiffs cite any authority supporting their argument that a "business relationship" exists between government agencies and the banks they are required to regulate under federal law. If that were true, then anyone who causes a law enforcement officer to be suspicious of and/or commence an investigation into a presumably innocent third party could be held liable for tortious interference on the basis they interfered with the third party's "business relationship" with

6

the officer. Plaintiffs' argument is not only unsupported by any authority but also yields an absurd result. Because Plaintiffs cannot plead facts to recover under either type of interference tort, their seventh claim should be dismissed under Rule 12(b)(6).

### B. Plaintiffs' claim for violation of the Oklahoma Deceptive Trade Practices Act fails because Plaintiff and Defendants are not competitors.

Plaintiffs argue their ODTPA claim is "categorically different" from Movants' cited case law because they are not purchasers or consumers. However, this distinction is irrelevant and does not cure Plaintiffs' failure to allege or otherwise identify a "competing business interest" between themselves and Defendants. *See Original Rex, L.L.C. v. Beautiful Brands Int'l*, LLC, 792 F. Supp. 2d 1242, 1261–62 (N.D. Okla. 2011).

"It has been definitively established that [the Deceptive Trade Practices Act] ***protect[s] competing business interests*** and do[es] not present a basis for suit by consumers." *Conatzer v. American Mercury Insurance Company, Inc*., 15 P.3d 1252, 1254 (Okla. Civ. App. 2000) (emphasis supplied). Thus, in *Thomas v. Metropolitan Life Ins. Co*., 540 F. Supp. 2d 1212 (W. D. Okla. 2008) the court dismissed the plaintiffs' claim for violation of the ODTPA because "there are no allegations that plaintiffs are businesses in competition with [defendant] as required by the ODTPA." *Id*. at 1228.

While Plaintiffs argue that Defendants made false representations in order to use accounts at Plaintiffs' bank, they fail to show they are in competition with or have competing business interests against any of the Movants—some of which Plaintiffs allege are marijuana-related entities. A competing business interest refers to persons and/or entities actively competing in the marketplace (which Plaintiffs are unable to allege). *See*

7

*Original Rex.* at 1262 ("Because [corporate] plaintiff has never had any actively competing franchises or stores, [corporate] defendants are entitled to summary judgment on plaintiff's ODTPA Claim."). Accordingly, Plaintiffs' eighth claim should be dismissed without leave to amend. *Thomas,* 540 F.Supp. 2d at 1228.

Date:  August 14, 2024                                    Respectfully submitted,

/s/ *Seth A. Day*
Jon Epstein, OBA No. 13274
Seth A. Day, OBA No. 20670
Carson Glass Lamle, OBA No. 32876
Littleton T. Ellett, IV, OBA No. 34644
**HALL, ESTILL, HARDWICK, GABLE, GOLDEN & NELSON, P.C.**
100 North Broadway, Suite 2900
Oklahoma City, OK  73102
Telephone:  (405) 553-2828
Facsimile:  (405) 553-2855
jepstein@hallestill.com
sday@hallestill.com
clamle@hallestill.com
tellett@hallestill.com

-and-

Neil David Kodsi
**FELDMAN KODSI**
8325 NE 2nd Avenue, Suite 204
Miami, FL 33138
Telephone: (605) 445-2005
nkodsi@feldmankodsi.com
(admitted pro hac vice)

**ATTORNEYS FOR SPECIALLY APPEARING MOVANTS**

## CERTIFICATE OF SERVICE

      I hereby certify that on August 14, 2024, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Ryan E. Price
Lawrence D. Rosenberg
Donald Shandy
Evan Vincent
*Attorneys for Plaintiffs*

                                /s Seth A. Day
                                Seth A. Day

20477135.1:014461.00001